## S. J. HOTT v. G. H. YARBOROUGH.

No. 3318. Decided December 13, 1922.

(245 S. W., 676.)

1.—Libel—Judicial Proceeding—Privileged Communication.

A letter to the foreman of the grand jury charging plaintiff with criminal acts and asking their investigation by that body was absolutely privileged, and could not be made the basis of a civil action against the writer for libel, even on proof of malice. (pp. 183-187).

2.—Same—Evidence—Malice.

In an action for libel based on a letter by defendant to the foreman of the grand jury asking investigation by them of charges of criminal offenses by plaintiff therein asserted, a letter to the County Attorney containing similar charges was not admissible in proof of malice: (1) because it, like that to the foreman, was absolutely privileged; and (2) because the letter on

which the action was based being absolutely privileged, proof of malice in writing it was not admissible or relevant. (pp. 187, 188).

Questions certified from the Court of Civil Appeals for the Second District, in an appeal from Montague County.

The Supreme Court referred the questions certified to the Commission of Appeals, Section A, for their opinion, and same, being adopted by the Supreme Court, is certified as its answer to the Court of Civil Appeals.

*Spencer & Jamison* and *Davis & Davis*, for appellant.

The letter from S. J. Hott to A. W. Ritchie, foreman of the Montague County grand jury, then in session, seeking to have a charge of crime investigated by such grand jury, pertains to the administration of criminal justice and is absolutely privileged and cannot be the basis for a libel suit. Runge v. Franklin, 72 Texas, 585; Johnson v. King, 64 Texas, 226; Lindsey v. State, 18 Texas App., 280; Taylor v. Iowa Park Gin Co., 199 S. W., 853; Vogel v. Grauz, 110 U. S., 311; Aransas Harbor Term. Ry. Co. v. Taber, 235 S. W., 841.

The defendant not being sued for anything contained in the letter from him to Paul Donald, or anything said by the defendant in any conversation with Paul Donald, and not being sued for having referred to the plaintiff as a "shyster," the evidence complained of is immaterial and irrelevant, and well calculated to mislead the jury, and besides, was absolutely privileged.

The foreman is the head of the grand jury and its executive officer, and is charged with the duty of issuing subpœnas and other necessary process. Anyone desiring to have a supposed crime investigated naturally communicates with the foreman of the grand jury, and depends upon him to bring the matter before the grand jury for its consideration. While the grand jury is in session, it is the duty of all persons having knowledge of the commission of crime to make the matter known to the grand jury. They are protected by law in so doing, and their motives are never questioned.

*Ocie Spear, H. F. Weldon*, and *Chas. L. Black*, for appellee. From argument on certified questions. (Appellee's brief did not reach the reporter).

On pages 2 and 3 of appellee's brief in the Court of Civil Appeals will be found a citation of the principal authorities dealing with the first question certified. Other cases may be found cited in the Annotations in 4 L. R. A. (N. S.), 149, and 7 Annotated Cases, 113. The following additional authorities are cited:

Smith v. Kerr, 1 Edm. (N. Y.) Select Cases, 190; Bodwell v. Osgood, 3 Pick. (Mass.), 379; Vanderzee v. McGregor, 12 Wend. (N. Y.), 545; White v. Nicholls, 3 How., 266, 11 Law Ed., 591; Coogler v. Rhodes, 38 Fla., 240; 56 Am. St. Rep., 176; Blakeslee v. Carroll, 64

Conn., 233-5, 29 Atl., 475, 25 L. R. A., 108; Sands v. Robison, 12 Smedes & Marshall, 704; Rex v. Abingdon, 1 Esp., 226; Morton v. Knipe, 128 App. Div., 94, 112 N. Y. Supp., 451.

The rule is settled that statements, oral or written, made in the due course of judicial proceedings, are absolutely privileged. If this letter, addressed to the foreman of the grand jury, amounts to a written statement made in a judicial proceeding, the writer of it is protected by an absolute privilege; if not, there is, we respectfully submit, no warrant of reason or authority for holding it to be more than conditionally or qualifiedly privileged. The class of occasions where the utterance of defamatory words is absolutely privileged is confined within narrow limits, and the courts as a rule steadily refuse to enlarge those limits. Odgers, Libel and Slander, page 184; Maurice v. Worden, 54 Md., 233, 39 Am. Rep., 384.

The Grand Jury is not a court or a body empowered to receive, file and consider pleading or petition of any character. The complaints heard before it, are based upon oral statements before the grand jury, made under oath, the party being subject to the pains and penalties of perjury. (Penal Code, Article 308.) The action of the grand jury, when finally taken, is based upon this oral testimony or upon such written or documentary evidence as is thought by the prosecuting attorney to be admissible in evidence in support of the prosecution. We submit, therefore, that statements made in a letter addressed to a member of the grand jury, unsworn and in no way subjecting the party to the power of the grand jury or to the penalties of the law, constitute no part of the proceedings of the grand jury. The statements made by a party, to constitute a part of the grand jury proceeding, should be such as are received in a grand jury session, when the party is subject to such control as may be exercised by the grand jury over persons who testify before it. A party who stands on the outside and writes a letter or sends a petition to the grand jury is not covered by the reason of the rule which protects grand jury proceedings by an absolute privilege.

MR. PRESIDING JUDGE McCLENDON delivered the opinion of the Commission of Appeals, Section A.

This case is presented upon certified questions from the Court of Civil Appeals.

Appellee, T. H. Yarbrough, sued appellant, S. J. Hott, in the district court of Montague County for libel, basing his action upon a letter written by appellee and addressed to ''Hon. A. W. Ritchie, foreman of the grand jury.'' It was contended by appellant that the letter was absolutely privileged, being a communication made in the due course of judicial proceedings and in the administration of the criminal law. The trial court submitted the case to the jury

upon the theory that the communication was only qualifiedly privileged and the jury returned a verdict against appellant for $729.15 from which judgment this appeal was taken. The letter which forms the basis of the suit was as follows:

"I wrote Paul Donald some ten days ago and gave him a list of persons I wanted brought before the grand jury but so far as I know he has paid no attention to me so I will take the matter up with you. *During the past year I have been defrauded out of considerable sum of money by a set of scoundrels that formed a collusion against me. This was N. G. Rogers et al., W. O. Stogner, T. H. Yarbrough, D. L. Dowd, etc.* I have paid this County about a thousand dollars in taxes and I claim the right under the law to have my property protected from such men as have me sued under the sham of a breach of rental contract. If you will summons me before your honorable body I will show that I have just cause for complaint. These are the parties whose names I sent to Donald: N. G. Rogers, Lon Rogers, W. O. Stogner, John Dean, D. L. Dowd, J. T. Puryear and T. H. Yarbrough.

*I will show both perjury and bribery in this case or come as near to showing it as can be done by polluted lips.* The testimony in this case is on record in the hands of the Court Stenographer. Ask him to produce these notes before your body, and I will show you where there is perjury. There is a place for all such men. I will show up Rogers and Stogner in their true light. Will you give this your prompt attention." (Unscoring ours.)

The underscored portions of the letter were especially alleged to be libelous and slanderous.

We quote from the certificate:

"The evidence shows that A. W. Ritchie was foreman of the grand jury of Montague County which had been duly impaneled and charged to inquire of offenses committed in Montague County. Though the evidence is not clear as to whether the grand jury was actually sitting at the time the letter was written, yet it is in evidence that it had been in session before and was in session after the writing of said letter and that the defendant was before it subsequent to the writing of said letter. Defendant testified that in writing the letter to Ritchie he wrote it to the latter personally but that he knew said Ritchie was foreman of the grand jury, and we believe the evidence tends to sustain the view that he wrote the letter to Ritchie as said foreman and not in his individual capacity."

During the course of the trial the court admitted over defendant's objection the following letter written by defendant to Paul Donald, county attorney of Montague County: This letter was not declared upon, but was offered and admitted for the sole purpose of showing actual malice in writing the letter to Ritchie.

"Saint Jo, Tex. Jan. 4, 1916.

Paul Donald, Co. Atty.,
Montague, Tex.
Dear Sir:

You will recall that I told you I wanted a grand jury investigation of the case that N. G. Rogers and W. O. Stogner had against me in the District Court last January and again in August. There was both perjury and bribery throughout this whole infamous proceedings. I could do nothing with either of these men in the civil courts as they are both bankrupts, so I will do my best to get them in the meshes of the criminal law. I was damaged to the extent of $350 and I now want redress by applying the just retributes of the law of our land. Including myself I want these parties brought before the next sitting of the grand jury which convenes soon. N. G. Rogers, W. O. Stogner, John Dean, T. H. Yarbrough, D. L. Dowd, W. C. Randell, J. T. Puryear and others. D. L. Dowd and J. T. Puryear both carried Rogers on their books and helped Rogers in the hope of getting their accounts paid. I will show this whole dirty business was a conspiracy and a frame-up. I want this all aired in the courts. I think if you get Rogers and Stogner indicted, I can get Benson of Sunset to assist you. You see he and Yarbrough are both candidates for county attorney and he would enjoy this advantage over his opponent. No one but a shyster would have taken such a case. Let me hear from you.

, Very truly,<br>(Signed) S. J. HOTT."

The Court of Civil Appeals has certified the following questions:

"1. Did the trial court err in concluding that the letter upon which the suit is predicated was not absolutely privileged, under the facts recited?.

2. Did the trial court err in admitting the letter to the county attorney for the purpose of showing the existence of malice?"

By an unbroken line of decisions in this State any communication, oral or written, uttered or published in the due course of a judicial proceeding, is absolutely privileged, and cannot constitute the basis of a civil action in damages for slander or libel. Johnson v. King & Davidson, 64 Texas, 226; Usher v. Skidmore, 28 Texas, 617; Runge v. Franklin, 72 Texas, 585, 3 L. R. A., 417, 13 Am. St. 833, 10 S. W. 721; Aransas Harbor Terminal Co. v. Taber (Com. App.), 235 S. W., 841; Connellee v. Blanton, 163 S. W., 404 (writ of error refused); Taylor v. Iowa Park Gin Co., 199 S. W., 853.

In Runge v. Franklin, it was held that defamatory matter in a pleading in a civil suit is absolutely privileged, where relevant to the issues sought to be adjudicated, although the person thus claiming to be defamed was not a party to the suit. The same holding was made in Taylor v. Gin Co.

In Aransas Harbor Terminal Ry. Co. v. Taber, it was held that matter set forth in a communication to the Railroad Commission in answer to a complaint filed with that body is absolutely privileged on the ground that the Railroad Commission is a *quasi*-judicial body.

A statement charging the district judge who tried a criminal case with misconduct in the trial, made in an application by the defendant to the Governor for executive clemency was held in Connellee v. Blanton, to be absolutely privileged on the ground that the Governor was by the Constitution invested with the pardoning power.

In Lindsay v. State, 18 Texas App., 280, the Court of Criminal Appeals held that the same rule applied to actions of criminal libel. The basis of the complaint in that case was an affidavit voluntarily made before a justice of the peace charging a female with being a common prostitute. It was said in that case:

"At common law no action will lie for defamatory statement made or sworn to in the course of a judicial proceeding before any court of competent jurisdiction. Everything that the judge says on the bench, or a witness in the box, or counsel in arguing, is absolutely privileged so long as it is any way connected with the inquiry. So are all documents necessary to the conduct of the cause, such as pleadings, affidavits, and instructions to counsel. This immunity rests on obvious grounds of public policy and convenience. Odgers on Libel and Slander, p. 86; Starkie on Slander and Libel, 246."

It has been repeatedly held in other jurisdictions that the civil action of libel will not lie for false statements made in an affidavit to procure an arrest or a search warrant. Shock v. McChesney, (4 Yeates, Pa., 507), 2 Am. Dec., 415; Vausse v. Lee, S. C., (1 Hill, 197), 26 Am. Dec., 168; Hartsock v. Reddick, Ind., 6 Blackf., 255, 38 Am. Dec., 141.

The mere putting in motion of the processes of the courts, whether civil or criminal, furnishes no ground for a civil action in damages.

"Everyone is liable to be harrassed and injured in his property and feelings by unfounded suits to recover of him property which is his own, but this is not injury for which he can have legal redress. To give a right to such redress, there must not only be a loss, but it must have been injuriously brought about by the violation of some legal right, and no one can claim a legal exemption from suit, by another who fancies he has a cause of action against him, however unfounded the claim may be in justice or law. Haldeman v. Chambers, 19 Texas, 53."

So when an attachment was sued out upon a false affidavit, but no levy was made thereunder, no cause of action arose. Johnson v. King & Davidson, above. It is different, however, where property rights are invaded by the illegal seizure of property under attachment or other process. But in such cases the damages are limited to those

resulting from the wrongful taking or detention of property, and not for any injury which may arise from the bringing of the action or any allegations or statements made therein.

Likewise when one is arrested on a false charge, and the party causing the arrest did so maliciously and without probable cause, redress may be had in an action for false imprisonment. But here again the gist of the action is the illegal arrest and not the bringing or instigation of the charge. And if there be no arrest no action arises. Usher v. Skidmore, Johnson v. King, above.

That the grand jury is an arm of the court, and a part of the judicial system for the administration of the criminal law is not open to question. From which it necessarily follows that any communication made to the grand jury in the regular performance of its duties is absolutely privileged and cannot constitute the basis of a civil suit for damages. In an able argument filed by counsel for appellee this proposition is conceded, but it is urged that a letter addressed to the foreman of the grand jury calling attention to a supposed violation of the criminal law and asking for a grand jury investigation is not properly a proceeding before the grand jury and is therefore not absolutely, but merely conditionally, privileged. The contention in this regard is that the grand jury proceeds in the investigation of crimes by the examination of witnesses under oath, appearing before them either voluntarily or under legal process; and that a false statement under such circumstances constitutes the crime of perjury for which the witness is liable to be punished; that in like manner a judge who abuses the privileges of his office is liable to be impeached, and the attorney who files scurrilous matter or who abuses his privileges is liable to punishment for contempt.

The rule which denies a right of action for defamatory matter uttered or published upon an occasion which the law holds privileged is based upon sound principles of public policy and not upon the assumption that the law otherwise affords redress or provides punishments which may act as deterrents.

The Supreme Court of Vermont in the early case of Harris v. Huntington (2 Tyler, 129, 4 Am. Dec., 728), held that no action would lie for libel upon a petition to either branch of the Legislature for redress of grievances, whether the subject matter be true or false. The opinion reviews the history of the subject, and discusses it from every angle. The following quotations from the opinion are pertinent to our present inquiry:

"An absolute and unqualified indemnity from all responsibility in the petitioner is indispensible from the right of petitioning the supreme power for the redress of grievances; for it would be an absurd mockery in government to hold out this privilege to its subjects; and then punish them for the use of it. And it would be

equally destructive of the right, for the courts of law to support actions of defamation grounded on such petitions as libelous.''

''But if this right of petitioning for a redress of grievances should sometimes be perverted to the purposes of defamation, as the right of petitioning with impunity is established both by the common law and our declaration of rights, the abuse of. the right must be submitted to, in common with other evils in government, as subservient to the public welfare.''

In that case the petition was not sworn to and the parties presenting it were not subject to any character of penalties for its presentation. This is also true in the case of relevant pleadings filed in a civil action and statements made to a prosecuting attorney charged by law with bringing criminal actions, which are held to be absolutely privileged. Vogel v. Grauz, 110 U. S., 311, 28 L. Ed., 158.

The grand jury is a very old institution and its general functions are a matter of common knowledge. The Constitution of the United States provides that, ''No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentation or indictment of a grand jury, etc.'' 5th Amendment.

In Section 10 of our own Constitution it is provided:

''No person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment, otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger.''

Article 432 of the Penal Code provides:

''It is the duty of the grand jury to inquire into all offenses liable to indictment of which any of the members may have knowledge, or of which they shall be informed by the attorney representing the State, or any other credible person.''

It is unquestionably the right, if not in fact the duty, of everyone who has knowledge of the commission of a criminal offense, punishment to the party guilty whereof is a matter of general public interest, to call to the attention of the grand jury the facts within his knowledge, to the end that they may have proper investigation and such action as the grand jury may deem advisable. Equally clear is the right of any one who may consider himself aggrieved by the actual or supposed commission of a crime to call the matter to the attention of the grand jury for investigation and action. The law does not restrict the method by which this may be done. But whenever it is done, by whatever method, so long as it is confined to a communication directly to the grand jury itself or to one of its members acting in his official capacity, it is clearly a part of a judicial proceeding, pertains to the proper administration of criminal

justice, is absolutely privileged and cannot be the basis of a civil action for damages.

The grand jury no doubt serves as a dumping ground for many of the grievances of the community, and the legislature has wisely provided that its deliberations shall be secret, and any member of that body or bailiff who divulges anything transpiring before them is subject to punishment for contempt of court. P. C., Article 425. The oath which every grand juror takes embodies a requirement that he will keep secret "the States counsel, your fellows and your own, unless required to disclose the same in the course of a judicial proceeding in which the truth or falsity of evidence given in the grand jury room, in a criminal case, shall be under investigation." P. C., Article 416. The law thus throws around the proceedings of the grand jury the same duty of secrecy and the same sanctity which it throws around a communication to the prosecuting attorney touching the discharge of his duties in bringing criminals to justice.

The foreman of the grand jury is required by statute to preside over its meetings and conduct its business and proceedings. P. C. 430. The letter declared upon shows upon its face that it is addressed to the foreman in his official capacity and that its purpose was to have the witnesses therein named summoned and the matters complained about officially investigated by the grand jury. Clearly this was a confidential communication to the foreman of the grand jury in his capacity as such touching a matter within the official duties of the body over which he presided. That the communication was made in the proper manner, to the proper officer, upon a subject properly within his duties, as a judicial officer, and that it was therefore absolutely privileged, does not to our minds admit of serious question.

It may not be amiss to state in this connection that had the letter been treated with that secrecy which the law enjoins, its contents would have gone no further than the grand jury room, and this action would never have been brought.

The first question, we conclude, should be answered in the affirmative.

We also think the letter to the county attorney was absolutely privileged and was therefore not admissible in evidence for any purpose. This was the holding in Vogel v. Grauz, above, where the evidence showed that the defamatory utterances were also made to other persons than the State's Attorney. The communication to the latter was held absolutely privileged upon the ground that: "the matter concerned the administration of penal justice, and the principles of public safety justifies and demands the rule of exclusion." It was further held:

"It makes no difference that there was evidence of the speaking of the same words to persons other than Mr. Cook (the State's At-

torney), and that the speaking of them to Mr. Cook was not the sole ground of action or recovery. The evidence was incompetent, and it must be inferred that it affected the minds of the jury both on the main issue and on the question of damages."

But aside from this, the letter to the county attorney was not declared upon but was merely admitted in evidence upon the issue of actual malice; and since the letter to the foreman of the grand jury, which alone was made the basis of the suit, was absolutely privileged the question of its falsity or of the malicious intent of its writer were not subjects of judicial inquiry.

The second question should therefore be answered in the affirmative.

BY THE SUPREME COURT.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

C. M. Cureton, Chief Justice.