## DANIELS v. FINNEY.

No. 12609.

Court of Civil Appeals of Texas.

Galveston.

Nov. 12, 1953.

Rehearing Denied Dec. 3, 1953.

Scardino & Regnier, Burns & Grumbles and Harry H. Burns, Houston, for appellant.

Andrews, Kurth, Campbell & Bradley, Hall E. Timanus and Robert L. Bradley, Houston, for appellee.

CODY, Justice.

This was a suit by Lonnie E. Daniels, Jr. to recover damages from Dr. R. Milton Finney on account of plaintiff's being charged with lunacy and being confined prior to his trial on such charge. It was not disputed that plaintiff's then wife on June 7, 1951, went to defendant's office in company with a minister of the Gospel and made certain communications to defendant, and that defendant thereafter on the same day delivered to plaintiff's wife the following written diagnosis or statement: "For L. E. Daniels: The above named man is suffering a serious mental illness, paranoid schizophrenia. At this time he is extremely dangerous to his wife and should be committed to an institution as he does not know right from wrong." At the time defendant delivered said written statement to plaintiff's wife, he knew that such statement would be used by her in connection with the charge of lunacy which she was going to file. The grounds relied upon by plaintiff in his petition were: (1) malpractice, and (2) malicious prosecution.

At the conclusion of plaintiff's evidence, the court granted defendant's motion for a directed verdict and rendered judgment that plaintiff take nothing. Plaintiff predicates his appeal upon three points, being to the effect: That the court erred in granting defendant's motion for a directed verdict because: (1) the evidence raised a fact issue as to defendant's negligence in making the diagnosis, and (2) the evidence raised a fact issue as to whether defendant's negligence was a proximate cause of plaintiff's damages, and (3) the evidence raised a fact issue as to defendant's being guilty of malicious prosecution. We overrule plaintiff's said points.

It thus appears that plaintiff tendered no issue on slander or libel but based his action exclusively upon malpractice and malicious prosecution.

■ Actions for damages upon malicious prosecution are not favored in law, and hence an action based upon the grounds of malicious prosecution " 'has been hedged about by limitations more stringent than those in the case of almost any other act causing damage to another and the courts have allowed recovery only when the requirements limiting it have been fully complied with. The disfavor with which the action is looked upon is especially marked in cases where the suit is being brought * * * against the plaintiff, as public policy favors the exposure of crime, which a recovery against a prosecutor obviously tends to discourage.' " Quoted with approval in Reed v. Lindley, Tex.Civ.App., 240 S.W. 348, 351. The opinion in the last cited case went on to quote a note taken from L.R.A.1915D, page 5, as follows: " 'The general rule of the common law, sustained by the overwhelming weight of authority, both in England and America, is that what facts, and whether particular facts, constitute probable cause, *is always a question of law,* which the judge must decide upon the facts found to exist in the particular case, and which it is error for him to submit to the decision of the jury.' " (Emphasis ours.)

The opinion in said case further went on to say that the author of the note which has just been quoted cites a great number of cases from the English reports and the United States Court decisions and from nearly if not all of the states of the Union, "including Texas; the Texas cases cited being Landa v. Obert, 45 Tex. 539; Ramsey v. Arrott, 64 Tex. 320; Gulf, C. & S. F. Ry. Co. v. James, 73 Tex. 12, 10 S.W. 744, 15 Am.St.Rep. 743." The court then concludes in Reed v. Lindley, supra, 240 S. W. at page 352, that " * * * while it is the function of the jury to determine what the facts are, it is for the court to declare the legal effect of the facts found." There was no dispute here about the facts which bear upon the issue of malicious prosecution. These are: That defendant was a psychiatrist and never heard of plaintiff until the night of June 6, 1951. It was then that a minister of the Gospel called defendant on the phone and made an appointment for plaintiff's wife to come with him (the minister) to defendant's office for consultation about plaintiff's condition for the following afternoon. The minister had been called in by plaintiff with the hope that matters could be straightened out between him and his wife, particularly for the sake of their four young children. It was after the minister had conferred with plaintiff's wife that he deemed it proper to make an appointment for consultation with a psychiatrist and this was known to plaintiff and plaintiff did not object.

Defendant was called to testify by plaintiff and he testified that he based his diagnosis of plaintiff's condition principally upon the facts communicated to him by plaintiff's wife in the consultation held at his office, at which she was accompanied by the minister. Such facts were: That some four months prior thereto she had confessed to adultery with one of the hired hands who worked at plaintiff's dairy; that plaintiff made her go with him to confront the man, and carried a pistol, and at the time shot the man in the hand; that plaintiff beat her up at that time; and that thereafter from time to time he accused her of having like affairs with other men; that plaintiff even accused her of having such an affair with his father, and of also having such affairs with Negroes; that he also made her say (what she said to defendant also was not true) that he was not the father of two of their children; that he also accused her of being a nymphomaniac, and also of being a pervert; that he once locked her in the bathroom and threatened to cut her throat; that he another time threatened to shoot her; that at the time she appeared at defendant's office she had a black eye and bruises which she stated plaintiff had given her a night or two before.

Defendant testified that from what the wife told him, he could see that plaintiff's mental furies were becoming more and more frequent, in an ever tightening spiral, and that an explosion was about due. That he, defendant, thought plaintiff could only get better if removed at once from where he could see or come into contact with his wife. Defendant additionally testified that he expected, at the time of the consultation, that plaintiff, in obedience to suspicions which are symptomatic of plaintiff's mental illness, would shortly put in his appearance, and that twice that afternoon plaintiff did call at defendant's office. In this connection we note, because plaintiff attaches importance thereto, that defendant was told during the consultation that a divorce had been instituted by the wife or was contemplated. The defendant also testified that the fact that the minister had made the appointment and had accompanied the wife to the consultation lent, to defendant's mind, a certain degree of verity to the communications.

■ The five factors or elements which it is necessary for plaintiff to establish to prevail in a malicious prosecution suit are set out in McManus v. Wallis, 52 Tex. 534, 545, and will not here be repeated. It is enough to say that the burden here was on plaintiff to affirmatively establish that defendant did not have reasonable grounds "from the facts known to him and communications made to him to believe" that plaintiff was mentally ill. Id., 52 Tex. at page 547.

■ Since as set out above there was no dispute as to the facts, it was a question of law for the court to determine the issue of the want of probable cause.

■ There is, we believe, an additional matter to be taken into consideration because defendant is being charged with malicious prosecution because of the diagnosis which he made of plaintiff's mental condition. It seems to us, upon principle, that no different rule should be applied to · hold a doctor liable for malicious prosecution based upon a wrong diagnosis than to hold him liable for malpractice based upon a wrong diagnosis. The law is now well established by the leading case of Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 782, 13 A.L.R.2d 1, that a patient, "has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence * * *." Only one doctor other than the defendant testified in this case. Certainly the defendant himself did not testify that his diagnosis was such as to constitute· negligence. Neither, in our opinion, did the other doctor. We assume for purposes of this opinion that the other doctor, who was a psychiatrist, was proved to be of the same school of practice as the defendant. It is the contention of plaintiff that the following hypothetical question and answer made out a case to go to the jury on the question of negligence in diagnosis. The hypothetical question reads, "I will ask you how you would handle this, if I came to you and was upset and said my husband was threatening me, and I told you there was a divorce action either pending or contemplated and told you that I had admitted to my husband some act of infidelity, and that my husband got upset about it and accused me of other acts, assuming that I came to you that way, a married woman complaining of my husband, on that basis could you make a diagnosis that my husband was a paranoid schizophrenic?" to which the doctor answered, "I don't think so."

■ Without dwelling upon the fact that all of the factors which defendant testified that he took into consideration in making his diagnosis were not included in the hypothetical question, the question and answer were not sufficient to raise an issue on whether defendant was guilty of malpractice. This because what one doctor would or could do is not the test. It must be testified to unequivocably by a doctor that the diagnosis made by the defendant-doctor was negligent, as we have hereinabove quoted from the Bowles case.

We cite as additional authority in support of our holding on malicious prosecution, Pate v. Stevens, Tex.Civ.App., 257 S. W.2d 763. Though we have referred to McManus v. Wallis, supra, perhaps we should specifically here state that when plaintiff was tried on the lunacy charge, he was acquitted.

This brings us to the issues relating to malpractice. These issues differ from the issue of malicious prosecution in that the courts do not look with disfavor upon malpractice suits. But in discussing whether plaintiff had made out a case to go to the jury on malicious prosecution, we have shown that the plaintiff failed to make out an issue to go to the jury on malpractice by his failure to make proof of negligence in diagnosis by another doctor.

The action of the court below in instructing a verdict upon defendant's motion is approved and the judgment of the court below is affirmed.