Terry Don CLARK, Appellant,

v.

James P. GRIGSON, Appellee.

No. 19605.

Court of Civil Appeals of Texas, Dallas.

Dec. 29, 1978.

Rehearing Denied Feb. 2, 1979.

John R. Vorhies, Dallas, for appellant.

G. Luke Ashley, Thompson, Knight, Simmons & Bullion, Dallas, for appellee.

Before GUITTARD, C. J., and AKIN and ROBERTSON, JJ.

GUITTARD, Chief Justice.

This suit for malpractice against a psychiatrist is based primarily on the defendant psychiatrist's testimony against plaintiff Terry Don Clark in a criminal trial. We hold that the psychiatrist is immune from civil liability based on his testimony in the criminal case and also that he cannot be held responsible for civil damages for his failure to advise that he might testify against plaintiff Clark or for an erroneous diagnosis of Clark's personality disorder. Consequently, we affirm a summary judgment in favor of the psychiatrist.

### Summary Judgment Evidence

The summary-judgment proof shows that Clark confessed to the crime of robbery, burglary, and assault to murder. The circumstances of the crimes showed deviate sexual tendencies of such an extraordinary nature that his attorney referred him to the defendant psychiatrist for an evaluation in connection with a possible defense of insanity. The psychiatrist interviewed Clark in the county jail, and, as a result of that interview, made a diagnosis of "severe sociopathic personality disorder," not subject to cure or treatment, but not such a "mental disease or defect" that would constitute a defense to a criminal prosecution. Clark's attorney advised the prosecuting attorney of this diagnosis, and he presented no insanity defense. At the punishment stage of the trial, after Clark had been found guilty of all the offenses charged, the psychiatrist was called as an expert witness and testified in accordance with his diagnosis. The

jury gave Clark the maximum punishment for each offense charged, and he appealed without success. In the present suit he seeks damages on the theory that he received heavier sentences than he would have received if the psychiatrist had made an accurate diagnosis of his condition and had not given adverse testimony in the criminal case.

The psychiatrist moved for summary judgment on the ground that any statements made in the course of the criminal proceedings against Clark were absolutely privileged and could not form the basis for an action of damages. He also alleged that as a matter of law any violation of his duties to Clark could not have been the proximate cause of any damages. The trial court sustained the motion and rendered judgment that Clark take nothing.

### Informed Consent

We first consider Clark's contention that a fact issue is raised on malpractice in that the psychiatrist failed to obtain his informed consent before conducting the psychiatric examination. In opposition to the motion for summary judgment, Clark filed an affidavit of Dr. Emerson Emory, another psychiatrist, who stated that "a reasonable practitioner of psychiatry," when employed to evaluate the mental condition of a person accused of crime, would disclose to the patient prior to the evaluation procedure the risk incident to the evaluation, explaining possible consequences of revelation of the information and "how the revealed data will be used by the lawyer, court, or the prosecutor." Clark also relies on the testimony of the defendant psychiatrist to the effect that he had made a diagnosis of "sociopathic personality" in approximately fifteen percent of thousands of accused persons referred to him for psychiatric evaluation. Consequently, Clark argues that the psychiatrist should have disclosed at the beginning of the interview that there was a fifteen-percent statistical probability that his diagnosis would be sociopathic personality, and if so, that he might be called to give testimony against

Clark based on that diagnosis. Clark cites such cases as *Wilson v. Scott,* 412 S.W.2d 299, 301 (Tex.1967), holding that a physician has a duty to make a reasonable disclosure to a patient of risks incident to medical diagnosis and treatment.

We conclude that the psychiatrist had no duty to disclose to Clark the possibility of adverse testimony based on his diagnosis. This risk concerned the legal, rather than the medical, consequences of the diagnosis. Since the psychiatrist's services were engaged by Clark's attorney, the psychiatrist could reasonably assume that the attorney would advise Clark concerning the legal consequences of an adverse diagnosis. Presumably the attorney, rather than the psychiatrist, was the expert in that field. The psychiatrist cannot be held responsible for any failure of Clark's attorney to give proper advice in this respect.

### Negligent Diagnosis and Immunity of Witness from Suit

We next consider whether a fact issue is raised as to the psychiatrist's liability for malpractice in negligently making an improper diagnosis. On this point, also, Clark relies on the affidavit of Dr. Emory, who stated that "a reasonable practitioner of psychiatry" would not have found a diagnosis of sociopathic personality on the sole criterion of "an individual who continues to break the rules and has no feeling of remorse," but would use sixteen enumerated "standard criteria" in making such a diagnosis. Dr. Emory also stated that such a practitioner would know that the necrophiliac and sadistic tendencies which Clark had exhibited were disorders separate and distinct from sociopathic personality. In this connection, Clark makes a policy argument to the effect that improper expert testimony would occur less frequently if experts are civilly liable for damages for negligence in reaching the conclusions to which they testify.

This proposed policy is more than counterbalanced, in our view, by the recognized policy, frequently applied, that in order to encourage unrestrained access to the courts and full development of the facts in court, any communication made in the course of a judicial proceeding is absolutely privileged and immune from civil liability for damages. *Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 166 S.W.2d 909 (1942); *Hott v. Yarbrough,* 112 Tex. 179, 245 S.W. 676 (1922); *Runge v. Franklin,* 72 Tex. 585, 10 S.W. 721 (1889); *Butler v. Lilly,* 533 S.W.2d 130 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ dism'd). Under this policy, even perjured testimony is privileged and cannot form a basis for civil liability. *Morris v. Nowotny,* 398 S.W.2d 661 (Tex.Civ. App.—Austin 1966, writ ref'd n. r. e.); *Morris v. Taylor,* 353 S.W.2d 956 (Tex.Civ.App. —Austin 1962, writ ref'd n. r. e.), *cert. denied,* 371 U.S. 842, 83 S.Ct. 71, 9 L.Ed.2d 78 (1962); Annot. 54 A.L.R.2d 1298 (1957). This rule applies to the opinions of expert witnesses as well as to any other testimony in a judicial proceeding. The community has the same interest in obtaining this kind of testimony, when relevant, without the intimidating threat of a lawsuit against the expert witness. If the policy underlying the immunity is strong enough to apply in cases of deliberate perjury, it applies with even greater force to cases in which the adverse testimony is the result of an expert's negligence in formulating his opinion. The same principle applies, whether the action is for defamation or for malpractice. Consequently, we hold that no civil liability exists on the part of an expert witness who forms an opinion and states that opinion in the course of his testimony in a judicial proceeding, even though he may have been negligent in the process. *Snyder v. Faget,* 295 Ala. 197, 326 So.2d 113, 115 (1976); *Bencomo v. Morgan,* 210 So.2d 236, 237 (Fla. App.1968); *Bailey v. McGill,* 247 N.C. 286, 100 S.E.2d 860, 867 (1957); *Dunbar v. Greenlaw,* 152 Me. 270, 128 A.2d 218, 223 (1956).

### Breach of Confidential Relationship

Clark also asserts that he has raised a fact issue with respect to the psychiatrist's abuse of the confidential physician-patient relationship in disclosing his diagno-

sis to the prosecuting attorney and in appearing as a witness for the prosecution without notifying Clark or his counsel. We find no basis for this claim of abuse of the confidential relationship. Clark's attorney in the criminal case was not appointed by the court, but was retained by members of his own family. Clark admits that his own attorney disclosed the psychiatrist's report to the prosecuting attorney, and, in fact, requested the psychiatrist to discuss the matter with the district attorney. Clark asserts that the attorney's action was also a breach of duty, but the psychiatrist cannot be held liable for damages for disclosing information which the prosecuting attorney already had. Neither is the psychiatrist liable for failure to notify Clark that he would be called as a witness, since his attorney knew that the prosecuting attorney was informed of the contents of the psychiatrist's report, and, therefore, that the psychiatrist was a potential witness at the punishment stage of the criminal trial. In this connection, we hold that the psychiatrist cannot be held liable for the derelictions, if any, of Clark's attorney.

Moreover, whatever breaches of duty the psychiatrist may have committed, the only damage of which Clark complains was a result of adverse testimony in the criminal trial, and, under the authorities already cited, the psychiatrist was absolutely privileged to communicate with the district attorney and give his testimony at the trial. Consequently, he cannot be held liable on the theory that such testimony was given as a result of the breach of his confidential relationship.

### Malicious Prosecution

■ Finally, Clark insists that the rule of immunity of a witness to civil liability does not apply here because a fact issue is raised on his allegation of malicious prosecution, which is an exception to the immunity rule. This contention is untenable because several of the elements of malicious prosecution were negated as a matter of law by the summary-judgment proof. Among the essential elements of a cause of action for mali-

cious prosecution are lack of probable cause and termination of the prosecution in favor of the plaintiff. *Parker v. Dallas Hunting and Fishing Club,* 463 S.W.2d 496, 499 (Tex. Civ.App.—Dallas 1971, no writ); *Ellis v. Sinton Savings Ass'n,* 455 S.W.2d 834, 836 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.). Here the summary judgment proof negates as a matter of law any claim of lack of probable cause, since Clark confessed his guilt for all three offenses. Likewise, the proof shows that the criminal prosecution did not terminate in Clark's favor, but in conviction for all offenses charged. Consequently, the record conclusively shows the absence of any material fact issue with respect to malicious prosecution.

Clark relies on the statement in *Daniels v. Finney,* 262 S.W.2d 431, 434 (Tex.Civ. App.—Galveston 1953, writ dism'd), that "no different rule should be applied to hold a doctor liable for malicious prosecution based on a wrong diagnosis than to hold him liable for malpractice based on a wrong diagnosis." This statement, when taken in its context, does not support plaintiff's argument. The case was a suit for malicious prosecution and malpractice based on the defendant's written report in a lunacy proceeding. The court referred to several elements of a cause of action for malicious prosecution and held that no fact issue was raised on the element of lack of probable cause because plaintiff failed to prove by a physician of the same school that defendant's diagnosis of mental illness was negligent. To that extent only the court held that the rules applicable to malpractice suits applied. The court did not hold that lack of probable cause and termination of the earlier proceedings in plaintiff's favor were not essential matters to be proved in a malicious prosecution case. With respect to the malpractice claim, the court held that plaintiff failed to raise a fact issue of negligent diagnosis. No question of privilege was raised or considered, so far as the opinion shows.

We have reviewed all of plaintiff's fifty-two points and find that none presents reversible error.

Affirmed.