**Marguerite Frances JAMES, Appellant,**

v.

**Raymond M. BROWN, Appellee.**

**No. 20566.**

Court of Appeals of Texas,
Dallas.

Dec. 21, 1981.

Rehearing Denied Jan. 22, 1982.

Erich F. Klein, Jr., Ron Edmondson, Lyne & Klein, Dallas, for appellant.

Susan J. Dasher, Asst. Atty. Gen., Austin, George C. Chapman, Christopher W. Byrd, Thompson & Knight, Dallas, for appellee.

Before AKIN, ROBERTSON and CARVER, JJ.

CARVER, Justice.

Marguerite Frances James appeals from a summary judgment denying her damages against Raymond H. Brown (now deceased and for whom his daughter, and heir at law, Elizabeth B. Heyne was substituted as a party), John L. Hall, and Michael R. Rosenthal. Each of the defendants were hospital staff doctors who, separately, assessed Mrs. James' mental health while she was confined by the probate court in course of a mental health proceeding instituted by Robert P. James and Toni L. Carter, Mrs. James' adult son and daughter. Mrs. James' alleged causes of action against the doctors were based upon their respective mental health assessments which were described by plaintiff as a "conspiracy to gain control of her estate" with her adult children who filed a mental health and a guardianship proceeding; "malicious prosecution" of the mental health proceeding; "false imprisonment" for her detention under the mental health proceeding; "libel" by their respective mental health assessments filed with the probate court and, additionally, by Dr. Rosenthal's assessment (repeated in a letter) furnished to her adult daughter who was applicant for appointment as guardian of Mrs. James; and "medical malpractice" or negligence in arriving at their respective mental health assessments of Mrs. James. We hold that the publication of the doctor's assessments of Mrs. James' mental health was absolutely privileged and affirm the summary judgment in favor of the doctors.

There is no dispute as to the events which led to the institution of Mrs. James' suit against the doctors. On October 21, 1977, Toni L. Carter and Robert P. James, Mrs. James' adult children, filed an application for the temporary hospitalization of Mrs. James in the probate court of Dallas County, Texas, pursuant to Texas Mental Health Code, art. 5547–31 Tex.Rev.Civ.Stat.Ann.

(Vernon Supp. 1980–1981). On the same day, the judge of the probate court of Dallas County, pursuant to such application, issued a warrant commanding any sheriff or peace officer to arrest Mrs. James and deliver her to Parkland Hospital for medical examination. Following the issuance of the warrant, two peace officers executed the warrant and delivered Mrs. James to Parkland Hospital. Next, Dr. Brown, a staff doctor of Parkland Hospital, conducted the examination required by the warrant and filed his written assessment of Mrs. James' mental health with the Probate Court. Shortly thereafter, Judge Ashmore entered an order in Mrs. James' mental health proceedings which recited that, upon consideration of the daughter's and son's application and the certificate of medical examination for mental illness (by Dr. Brown), it was ordered that Marguerite Frances James be placed in protective custody and immediately transported to Presbyterian Hospital, and there detained pending further orders of this court. Later Mrs. James was removed from Parkland Hospital to Presbyterian Hospital. On October 24, 1977, three days later, Judge Ashmore entered an order in Mrs. James' mental health proceedings that "staff doctors at Presbyterian Hospital" were appointed to examine Mrs. James and file their "certificate of said examination with this Court" pursuant to Tex.Rev.Civ. Stat.Ann. art. 5547–32 (Vernon 1958). Between October 21 and October 24, 1979, Dr. Rosenthal, a staff doctor at Presbyterian Hospital examined Mrs. James and filed his written assessment of her mental health with the Probate Court on October 27, 1977. On October 24, 1977, Dr. Hall, another staff doctor at Presbyterian Hospital, examined Mrs. James and filed his written assessment of her mental health with the probate court on October 26, 1977. Additionally, on October 24, 1977, Dr. Rosenthal prepared a letter addressed to the attorney who was preparing a guardianship application for Toni L. Carter, Mrs. James' daughter, which reflected his assessment of Mrs. James' mental health. Toni L. Carter, picked up this letter personally at Dr. Rosenthal's office

and, on October 25, 1977, filed her application for, and was appointed, the temporary guardian for Mrs. James' person and estate. Also, on October 25, 1977, Mrs. James sought, and was granted, a writ of habeas corpus from a District Court releasing her from the custody of Presbyterian Hospital. On November 10, 1977, Mrs. James' mental health proceeding was "dismissed by agreement of both parties". On March 22, 1978, Toni L. Carter and Mrs. James jointly executed a "release" which provided that Toni L. Carter would close the temporary guardianship and Mrs. James "hereby releases Toni from any and all liabilities Toni might have individually or by her representative capacity to Marguerite as a result of any actions to her by Toni or any other proceedings brought by Toni for the care of Marguerite or for the appointment of a personal representative of the estate and person of Marguerite".

The foregoing events precipitated Mrs. James' current suit against the doctors which was filed on September 13, 1978. After Mrs. James amended her suit on February 14, 1979, the doctors filed motions for summary judgment. Although Mrs. James' amended petition urges various "causes of action" against the doctors, the crucial foundation of each claim is the publication of the doctor's respective opinions of Mrs. James' mental health, which opinions Mrs. James asserts were erroneous. In answer to all of Mrs. James' claims, the doctor's respective motions for summary judgment contend that the publication of their opinions were absolutely privileged, even if erroneous because such opinions were made and published as part of a judicial proceeding (mental health proceeding), or preliminary to a proposed judicial proceeding (guardianship proceeding), and such opinions related to both of the proceedings because Mrs. James' mental health was the ultimate issue in each proceeding. We agree that the publication of the doctor's opinions as a part of, or preliminary to, a judicial proceeding was absolutely privileged and that the trial court correctly held that none of Mrs. James' causes of action, based upon such publication, could be maintained.

■ The rule invoked by the doctor's motions for summary judgment is succinctly stated in § 588 of the Restatement (Second) of Torts, (1981) which provides:

"A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding."

The rationale for the rule is based on a matter of public policy, that the function of witnesses is of such fundamental importance in the administration of justice that the full disclosure by a witness must not be hampered by any fear of a retaliatory private suit by one who might deem himself injured by the witness' disclosure. As applied to Mrs. James, these doctors' opinions of Mrs. James' mental health, as well as the opinions of others, both doctors and laymen, were of fundamental importance to the administration of justice in both her mental health proceeding and her guardianship proceeding. It is in the reconciliation of differing testimony, and differing opinions, where admissible, that justice under our adversary system is actually found and determined. If witnesses, of either opinion, as to Mrs. James' mental health were hampered in their full disclosure by fear of retaliation by private suit, no differing testimony or opinions would be likely to be offered and no reconciliation thereof would be possible so as to produce justice on the issue.

■ The absolute privilege of communications as a part of, or preliminary to, a proposed judicial proceeding was applied by our supreme court in *Reagan v. Guardian Life Insurance Co.*, 140 Tex. 105, 166 S.W.2d 909 (1941), which held that no remedy existed in behalf of an insurance agent libeled by a letter his employer mailed to the Board of Insurance Commissioners falsely accusing the agent of an act that would deprive the agent of his license. *Reagan* holds that the absolute privilege cannot be denied

even though the statement was false and made with malice. This court, relying on *Reagan*, held in *Clark v. Grigson*, 579 S.W.2d 263 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.), that even perjured testimony is absolutely privileged and cannot form the basis of civil liability. Additionally, this court held in *Russell v. Clark*, 620 S.W.2d 865 (Tex.Civ.App.—Dallas 1981, no writ), that an attorney's letter, preliminary to a lawsuit and written to parties investing with the prospective defendant, libeling the prospective defendant, was absolutely privileged. In accord with these authorities, we hold that each doctor's assessment of Mrs. James' mental health, whether filed in the pending mental health proceeding or delivered to Mrs. James' daughter to support her application for appointment as Mrs. James' temporary guardian, were absolutely privileged; therefore, Mrs. James has no civil remedy, even if it be conceded that such assessments were erroneous.

■ Mrs. James argues that even though she may have no remedy for *defamation* under the foregoing authorities, nevertheless, her claims for false imprisonment, malicious prosecution, and conspiracy, with her children to gain control of her property should not be without a remedy. We cannot agree. Mrs. James does not accuse the doctors of any *act* save the publication of their respective assessments of her mental health in, or preliminary to, the two judicial proceedings. If this one *act* is absolutely privileged, as the foregoing authorities hold, then the *consequences* of that absolutely privileged act cannot be made the basis for a cause of action. It can hardly be argued that a witness' full disclosure would not have been hampered in our case if each doctor who concluded that Mrs. James was of unsound mind, although being spared from a retaliatory suit for libel, is, because of such opinion alone, to be subjected to retaliatory suits for consequences of such privileged opinion, i.e., her confinement by the mental health court or the appointment of a guardian of her person and estate by the probate court. We hold that Mrs. James has no cause of acting against the doctors for their opinions, or the conse-

quences of such opinions, in whatever form the cause of action may be cast, where such opinions are published or communicated in, or preliminary to, the two judicial proceedings concerning Mrs. James.

■ Mrs. James also argues that each of the doctors owed to her, a patient, a duty to arrive at their respective assessment of her mental health by the exercise of that degree of care and skill as would be exercised by other doctors of the same speciality in our community. Mrs. James offered summary judgment affidavits by other doctors to the effect that such care and skill had not been exercised in her case. Therefore, she urges that she was entitled to try her "malpractice" claim because it would not be based upon the privileged act. We cannot agree even if it is conceded that the doctors owed such a duty to Mrs. James and that they had breached that duty in their respective assessments of her mental health, there can be no remedy accorded Mrs. James here because her claimed injury, if any, was not the doctor's assessment as such but the publication thereof, and the publication given was absolutely privileged. *See Clark v. Grigson*, 579 S.W.2d 263 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). In *Clark*, this court sustained a summary judgment in favor of a doctor who assessed, and later testified about, the mental health of Clark, who was the accused in a criminal case. Clark was convicted and later sued Grigson for damages alleging medical malpractice and, like Mrs. James, offered other doctor's affidavits concerning Grigson's lack of care and skill to counter Grigson's motion for summary judgment. We held in *Clark* that:

"Consequently, we hold that no civil liability exists on the part of an expert witness who forms an opinion and states that opinion in the course of his testimony in a judicial proceeding, even though he may have been negligent in the process. *Snyder v. Faget*, 295 Ala. 197, 326 So.2d 113, 115 (1976); *Bencomo v. Morgan*, 210 So.2d 236, 237 (Fla.App.1968); *Bailey v. McGill*, 247 N.C. 286, 100 S.E.2d

860, 867 (1957); *Dunbar v. Greenlaw*, 152 Me. 270, 128 A.2d 218, 223 (1956)." *Clark, supra*, at p. 265.

We hold that since the publication of the doctor's assessments of Mrs. James' mental health were absolutely privileged, no civil liability for damages exists in favor of Mrs. James for consequences of such publication, even though such assessments were arrived at negligently, or as a result of the doctor's malpractice.

Finally, Mrs. James contends that even though the absolute privilege accorded to the publication of the doctor's assessment of her mental health, as established by the above cited authorities, may be applicable in other cases, the privilege cannot be accorded in a mental health proceeding. Mrs. James argues that our Legislature has specifically imposed liability in mental health proceeding on person not acting in good faith, or acting unreasonably, or acting with negligence. *See* art. 5547–18, Mental Health Code Tex.Rev.Civ.Stat.Ann. (Vernon 1958). We cannot agree. Article 5547–18 provides that:

> "All persons acting in good faith, reasonably and without negligence in connection with examination, certification, apprehension, custody, transportation, detention, treatment or discharge of any person, or in the performance of any other act required or authorized by this Code, shall be free from all liability, civil or criminal, by reason of such action. Acts 1957, 55th Leg., p. 505, ch. 243 § 18."

■ This statute does not *impose* liability but grants immunity to all persons acting "in good faith, reasonably and without negligence." Even if it is effective to exclude from the immunity granted, damages resulting directly from negligent detention, treatment, and the like, a point we need not decide, we hold that it does not abrogate the absolute privilege of doctors to communicate their findings and opinions to the court in the course of any judicial proceeding. *See Clark*, supra, at 265. Here, the doctors do not seek to excuse themselves in reliance upon Article 5547–18, but instead

rely upon the absolute privilege accorded them under the authorities cited above. We are not convinced by Mrs. James' arguments of any reason why the policy favoring full development of the facts from witnesses, unhampered in their full disclosure by the fear of retaliatory suits, should not apply in mental health proceedings and guardianship proceedings. Consequently, summary judgment was properly granted.

Affirmed.

TED Z. ROBERTSON, J., dissents.

TED Z. ROBERTSON, Justice, dissenting.

I dissent because a genuine issue of material fact exists with respect to appellant's cause of action for medical malpractice. I would reverse the summary judgment and remand the case for trial.

Initially, I would hold that Texas Mental Health Code, Tex.Rev.Civ.Stat.Ann. arts. 5547–1 *et seq.* (Vernon's 1958) and (Vernon's Supp. 1980–1981) imposes a relationship of patient and doctor upon persons such as appellant and appellee. *See* Tex. Rev.Civ.Stat.Ann. art. 5547–4(j) *and* (d) (Vernon Supp. 1980–1981). Since the relationship of patient and doctor is a matter of law in a case such as the present case, it was not necessary for appellant to plead the existence of the relationship. Tex.R.Civ.P. 45; *Wright v. McKenney*, 34 Tex. 568 (1870–71); *Mussina v. Goldthwaite*, 34 Tex. 126 (1870–71); *Milburn v. Walker*, 11 Tex. 329 (1854). Appellant's pleading sufficiently alleged the facts which as matter of law gave rise to the relationship of patient and doctor.

Furthermore, I do not agree with the majority's holding that there can be no remedy under the Texas Mental Health Code for malpractice occurring as an incident of proceedings under the Code. Article 5547–18 (Vernon's 1958), entitled *Liability*, relieves from liability persons acting *without negligence* pursuant to the Mental Health Code. Such a provision is unnecessary if any act or omission, whether negligent or not, is absolutely privileged because it occurred in the course of proceedings

under the Mental Health Code. Section 3.01(2) of the Code Construction Act, Tex. Rev.Civ.Stat.Ann. art. 5429b–2 (Vernon Supp. 1980–1981) states that in enacting a statute it is presumed that the entire statute is intended to be effective. Although the Code Construction Act does not control the interpretation of Tex.Rev.Civ.Stat.Ann. art. 5547–18 (Vernon 1958) because the article was adopted by the 55th legislature rather than the 60th or a subsequent legislature, the provisions of the Code Construction Act are instructive. Indeed, even without the guidance of the Code Construction Act, the legislature cannot be presumed to have done a vain thing in the enactment of a statute. "A construction should not be adopted, if it can be avoided, that will render any part of the act inoperative, negatory or superfluous." *Orsinger v. Schoenfeld*, 269 S.W.2d 561, 564 (Tex.Civ. App.—San Antonio 1954, writ ref'd n.r.e.); *accord, Spence v. Fenchler*, 107 Tex. 443, 180 S.W. 597 (1915). Additionally, it is a settled rule that the express mention or enumeration of one person, thing, consequence, or class is equivalent to an express exclusion of all others. *State v. Mauritz— Wells Co.*, 141 Tex. 634, 175 S.W.2d 238 (1943). By expressly stating that persons acting without negligence pursuant to the Mental Health Code were free from all liability, the legislature excluded persons acting negligently from the immunity afforded by the Code.