**ARANSAS HARBOR TERMINAL RY. CO. v. TABER.  (No. 265–3486.)**

(Commission of Appeals of Texas, Section A. Dec. 14, 1921.)

1. **Libel and slander ⬿36—"Privileged communication" defined.**

An absolutely privileged communication is one in respect to which by reason of the occasion on which it is made no remedy can be had in a civil action.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Privileged Communication.]

2. **Libel and slander ⬿38(1) — Public Service Commissions ⬿1—Railroad Commission has quasi judicial powers, and communications thereto are absolutely privileged.**

Under Const. art. 10, § 2, authorizing the Railroad Commission, and Vernon's Sayles' Ann. Civ. St. 1914, art. 6653, creating that body and empowering it to hear and investigate complaints, compel attendance of witnesses, compel testimony, and render judgments, though enforceable only by referring them to another tribunal, such commission is a quasi judicial body and an arm of the government; and a communication to them in answer to a complaint filed with them was absolutely privileged.

3. **Libel and slander ⬿38(1) — Communications in judicial proceedings absolutely privileged.**

Communications, made in the course of a judicial proceeding, are absolutely privileged.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by C. C. Taber against the Aransas Harbor Terminal Railway Company and another. From a judgment on directed verdict for defendants, plaintiff appealed to the Court of Civil Appeals, and on judgment there in favor of plaintiff (219 S. W. 860), defendant named brings error. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.

Denman, Franklin & McGown, of San Antonio, for plaintiff in error.

T. O. Woldert, of Houston, and J. D. Todd, of Corpus Christi, for defendant in error.

RANDOLPH, J. This is a suit by C. C. Taber against Aransas Harbor Terminal Railway Company and J. C. Moore to recover damages for libel. Moore having died, the cause was dismissed as to him, and trial proceeded between plaintiff, Taber, and the defendant company.

The cause of action was based upon an alleged libel contained in a letter written by Moore, vice president of defendant company, to the Railroad Commission of Texas, which was written by defendant Moore in answer to a complaint filed before the Commission by Taber. On trial in the district court the jury returned an instructed verdict in favor

of defendant. The case was appealed to the Court of Civil Appeals for the Fourth Supreme Judicial District, and from a judgment by that court adverse to the defendant company (219 S. W. 860) the Supreme Court granted a writ of error.

The application for writ of error alleged four grounds of error committed by the Court of Civil Appeals:

"(a) In holding that the lower court erred in instructing a verdict for defendant; (b) in holding that the alleged libelous matter was not absolutely privileged; * * * (c) in holding that the Railroad Commission was neither a judicial nor a quasi judicial body; and (d) in holding that an official communication addressed to the Railroad Commission of Texas, one of the departments of the government of the state, was not a privileged communication."

The Court of Civil Appeals in reversing and remanding the case to the district court gave, in their opinion, as their reason for doing so that the letter from defendant was only qualifiedly privileged, because the Railroad Commission is not a judicial tribunal, or what is termed by courts quasi judicial. The determination of the correctness of this holding will be arrived at by ascertaining whether or not the Railroad Commission has quasi judicial powers, and whether or not that body is a department of the government of the state of Texas.

[1] An absolutely privileged communication is one in respect to which by reason of the occasion on which it is made no remedy can be had in a civil action. 17 R. C. L. p. 330, § 76.

The creation by the Legislature of the Railroad Commission was authorized by article 10, section 2, Amendment 1890 of the Constitution of Texas. The Legislature, acting on that authorization, created the Commission by passing article 6653, chapter 15, Vernon's Civil Statutes of Texas 1920.

Section 12 of article 6654 requires railway companies to maintain adequate, confortable, and clean depots and depot buildings at its several stations, and to provide for the lighting thereof, and for the maintenance of adequate and suitable freight depots and buildings.

Article 6664 of that chapter contains the provision for the filing of complaints with the Commission and the procedure in the hearing of such complaints.

Article 6668 gives the Commission power to summons witnesses and to compel their attendance in making any examination or investigation, and to compel the parties to testify in such investigation.

Article 6672 provides:

"If any railway company doing business in this state shall hereafter violate any other provision of this chapter, or shall do any other act herein prohibited, or shall fail or refuse to perform any other duty enjoined upon it for which a penalty has not been provided by law, or shall fail, neglect or refuse to obey any lawful requirement, order, judgment or decree made by the Railroad Commission of Texas, for every such act of violation it shall pay to the state of Texas a penalty of not more than five thousand dollars."

Article 6673 provides the method of collecting penalties adjudged by the Commission.

[2] Do these statutes create a body with quasi judicial powers, and is the Commission thus created a department of the government of the state? We think both of these questions should be answered in the affirmative. The power to hear complaints and to investigate them, to summons and compel the attendance of witnesses, to compel persons to testify in transactions being investigated, and the power to render judgment in the matters being investigated are expressly provided by these statutes. What more can any judicial body do? The fact that the Commission can only enforce its decrees by referring them to another tribunal does not alter the force of its decrees. If the Commission has the power to enforce the attendance of witnesses, to compel them to testify, as the courts of our lands have, what protection is afforded a witness who is brought before the Commission, if there is withdrawn from him that protection given by law to witnesses before the courts? The machinery of the law when put in motion by the orders and decrees of the Commission is intended to be as effective as when operating through our courts. To deny protection to witnesses and complainants before the Commission would result in the Commission being compelled to recognize and permit the right of such witnesses to refuse to testify. This was not, and is not, contemplated in the creation and organization of the Commission.

"Judicial power is defined to be the authority to determine the rights of persons or property by arbitrating between adversaries in specific controversies at the instance of a party thereto; the power conferred upon a public officer involving the exercise of judgment and discretion in the determination of rights in specific cases affecting the interests of persons or property, as distinguished from ministerial power or authority to carry out the mandates of judicial power or of the law; the power which adjudicates upon and protects the rights and interests of individual citizens, and to that end construes and applies the law." 23 Cyc. 1620 (Judicial Power), and authorities there cited.

"Many times the courts have defined certain duties of the executive or administrative officers as 'quasi judicial,' and recognized and confirmed the validity of the acts of such officers. While this definition has been approved and sanctioned by all, yet the fact remains that the function of the act itself is either administrative or judicial, and there can in reality be no middle or half-way ground between them. This being true, the conclusion follows that many executive or administrative acts performed by judicial officers, and many judicial acts per-

formed by ministerial officers, are, and must be, held valid, notwithstanding the principles stated above. Thus it often becomes necessary to the full and proper discharge of the duties imposed upon an official belonging to one class to perform an act, the function of which, strictly speaking, belongs to another. The performance of such duties being, to some degree at least, essential to the full discharge of the duties imposed and properly within the power of actor, the power conferred must be held to be valid; otherwise a condition of chaos would arise." 7 R. C. L. § 81, p. 1047.

As to what constitutes a judicial proceeding, it has been held:

"That defamatory words spoken in the course of proceedings for the disbarment of attorneys, or in proceedings before military tribunals or before the Interstate Commerce Commission, or ·in extradition proceedings before a governor, though such proceedings are but quasi judicial in character, fall within the protection attached to utterances in the course of ordinary judicial proceedings." 17 R. C. L. p. 337, § 82.

[3] That communications made in the course of a judicial proceeding are absolutely privileged is no longer a debatable question in this state. Runge v. Franklin, 72 Tex. 585, 10 S. W. 721, 3 L. R. A. 417, 13 Am. St. Rep. 833.

That the Railroad Commission is a department of the state government is clear. It is a creature of the Constitution, a distinct, and in many respects an independent, arm of the government. This being true, the communication complained of in this case was for that reason, also, absolutely privileged. Connellee v. Blanton, 163 S. W. 404 (writ of error refused).

We therefore hold that the Court of Civil Appeals erred in holding that the Railroad Commission was not a quasi judicial body; that they were not exercising judicial powers at the time of the receipt of the communication complained of in this case; and that the communication was not absolutely privileged; and we recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.