James P. PARKER, Appellant,

v.

C. Ray HOLBROOK, Appellee.

No. 01–81–0852–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 31, 1982.

Rehearing Denied Oct. 21, 1982.

 

Michael S. Tomasic, Houston, for appellant.

James R. Ansell, Galveston, for appellee.

Before DOYLE, DYESS and DUGGAN, JJ.

## OPINION

DYESS, Justice.

This is an appeal from a summary judgment granted by the trial court in this slander suit brought by reason of comments made by Judge Holbrook, the appellee, in a hearing before the executive committee of the Houston-Galveston Area Council (H–GAC). Judge Holbrook was present and participating as a member of such committee. Judgment was granted, apparently on the basis that the hearing was quasi-judicial in nature and therefore all comments made during the hearing were absolutely privileged or non-actionable.

The appellant raises four points of error on appeal as follows:

### Point of Error Number One

The District Court erred in granting appellee's motion for summary judgment and in overruling appellant's motion for new trial because as a matter of law the executive committee of the Houston-Galveston Area Council was not a quasi-judicial body at the meeting in which appellee made defamatory statements about appellant's character and reputation.

### Point of Error Number Two

The District Court erred in granting appellee's motion for summary judgment and in overruling appellant's motion for new trial because material issues of fact existed regarding appellee's entitlement to claim an absolute privilege to make defamatory statements about appellant's character and reputation.

### Point of Error Number Three

The District Court erred in granting appellee's motion for summary judgment

and in overruling appellant's motion for new trial because as a matter of fact the factually sufficient evidence presented by appellee did not entirely preclude all issues of fact establishing the executive committee of the Houston-Galveston Area Council as a quasi-judicial body.

### Point of Error Number Four

The District Court erred in granting appellee's motion for summary judgment and in overruling appellant's motion for new trial because as a matter of law the admissible evidence presented by appellee did not entirely preclude all material issues of fact establishing the executive committee of the Houston-Galveston Area council as a quasi-judicial body.

The thrust of the appellant's points of error is his claim that the executive committee of the H–GAC is not a quasi-judicial body.

Based upon the record before the court, we conclude that the executive committee of the H–GAC as a matter of law is not a quasi-judicial body and that consequently, no absolute privilege is conferred upon the Holbrook statements. We do find, however, that a qualified privilege exists to protect Holbrook's statements, requiring the cause to be reversed and remanded to the trial court for a hearing on the merits to determine if Holbrook's statements were made with malice.

What does the record reflect as to the nature and function of the H–GAC? It appears that it is a regional council of governments, i.e., the regional planning agency for a 13 county area of the state designated by the governor. According to the director of the agency, the council "performs a variety of long-term planning jobs for particular governmental responsibilities which are inherently multi-jurisdictional in nature." One of the council's functions, and the one which is particularly involved in the case at bar, is its position as a health systems agency for the 13 county governments it represents. In this capacity, the H–GAC reviews requests from private and public entities for federal funds, and de-

cides whether to recommend these applicants to the federal government for funding.

At the hearing in question in this case, the H–GAC executive committee was considering whether to recommend continued federal support for the "4–C's Clinic program," a Galveston County Coordinated Community Clinics Program. Although a decision of the H–GAC is not binding on the federal funding agencies, it appears that its recommendations are followed in approximately 90% of the applications coming before it. Consequently, whatever comments were made at the hearing could have a substantial impact on the vitality of the 4–C's Clinic program.

The appellant appeared before the committee with the obvious purpose of persuading it not to recommend the 4–C's Clinic for continued funding. After the appellant had concluded his comments, the appellee, who had had a major role in the initial organization of the clinic, and who was in favor of the program, made the following remarks:

> I think in addition to the merits of this program you also ought to know that Dr. Parker is the kind of person that sued Galveston County in the past for alledged drainage problems on his ranch over near the Brazoria County line. He also is a politician. He ran for the State Senate last year, against Senator A.R. Schwartz, and is held in very low esteem by his colleagues at the Galveston County Memorial Hospital. Also, we refer you to any politician in Galveston County who at one time or other he has castigated. And it seems like that every month or two he is on some new kick about criticizing some program in Galveston County and this just happened to be the newest one that he is on. I think his credibility is very low and I think if you talk to anybody in Galveston County who is involved in this 4–C's program including the Medical Branch you will find it is one of the finest medical programs in the State of Texas.

■ Summary judgment, it would appear, was granted on the basis of the court's conclusion that the hearing was quasi-judicial in nature, and, therefore, that any comments made during the hearing were absolutely privileged. If the H–GAC's Executive Committee was exercising quasi-judicial functions at this particular hearing, i.e., if it was functioning in a quasi-judicial manner, an absolute privilege would attach to every statement made during the proceeding. This in itself is important, because absolute privilege is one of only two total defenses to a claim of slander; the other one is truth, *Zarate v. Cortinas,* 553 S.W.2d 652 (Tex.Civ.App.—Corpus Christi 1977, no writ). When an absolute privilege is accorded to statements made in a proceeding, no action in damages will lie, even though the statements are false and uttered with express malice. *Reagan v. Guardian Life Insurance Co.,* 140 Tex. 105, 166 S.W.2d 909 (Tex.1942). The privilege is based on public policy considerations that every citizen should have the unqualified right to appeal to the agencies of his government for redress, without the fear of being called to answer in damages for libel or slander, and that the public will be benefitted and the administration of justice advanced if witnesses are not deterred by fear of lawsuits. *Moore & Associates v. Metropolitan Life Insurance Co.,* 604 S.W.2d 487 (Tex.Civ.App.—Dallas 1980, no writ). In short, conduct, which would otherwise be actionable, escapes the burden of liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation. *Zarate,* supra.

Since an absolute privilege completely forecloses a remedy in a civil action, the class of absolute privileges has traditionally been very limited. *Putter v. Anderson,* 601 S.W.2d 73 (Tex.Civ.App.—Dallas 1980, writ ref. n.r.e.). Originally, only those proceedings that were of a judicial nature were deemed to warrant the protection of an absolute privilege. *Id.* at 76. Later, the protection was expanded to include some proceedings held before administrative agencies or commissions that were of a judicial nature and warranted the protection. *Aransas Harbor Terminal Railway Co. v. Taber,* 235 S.W. 841 (Tex.1921). These judicial powers exercised by administrative agencies have been described as quasi-judicial powers, encompassing the notion that they are exercised by non-judicial agencies. 1 Am.Jur.2d § 160. A quasi-judicial power has been described as the power or duty to investigate and to draw conclusions from such investigations. *Id.* At least six powers have been delineated as comprising the judicial function and would be indicative of whether a commission was acting in a quasi-judicial, or merely an administrative, capacity: 1) the power to exercise judgment and discretion; 2) the power to hear and determine or to ascertain facts and decide; 3) the power to make binding orders and judgments; 4) the power to affect the personal or property rights of private persons; 5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and 6) the power to enforce decisions or impose penalties. 1 Am.Jur.2d §§ 167–173.

An administrative agency need not have all of the above powers to be considered quasi-judicial, but certainly the more of these powers it has, the more clearly is it quasi-judicial in the exercise of its powers.

Texas courts have confronted this problem a number of times. In *Reagan v. Guardian Life Ins. Co.,* supra, an insurance company was sued for defamation by a former employee because the company informed the Texas Board of Insurance Commissioners that the employee tried to collect insurance payments from several customers after he was terminated. The court cited four reasons for its decision that the information presented to the board was protected by an absolute privilege: 1) the Board was clothed by statutes with the authority to license insurance agents, i.e., to determine who is fit and who is not fit for a license; 2) the Board was authorized to conduct investigations and to make findings; 3) agents whose licenses were revoked had the right to have redress in courts as in

other civil suits; and 4) the Board was required to hold a hearing before revoking an agent's license.

In *Putter v. Anderson,* supra, a complaint was filed with the Internal Affairs Division of the Dallas Police Department by a private citizen who charged one of the officers with mistreatment of a prisoner. The trial court dismissed the case on a summary judgment motion, concluding that the communications were absolutely privileged. The Court of Appeals, describing a quasi-judicial power as the power or duty to investigate and to draw conclusions from an investigation, decided that the Internal Affairs Division exercised a quasi-judicial function since it conducted investigations on complaints received, concluded whether the complaints were justified and then either gave the matter to the Police Chief or to a disciplinary board for discipline.

The following hearings have also been deemed quasi-judicial in nature: hearings before the State Bar Grievance Committee, *McAfee v. Feller,* 452 S.W.2d 56 (Tex.Civ. App.—Houston [14th Dist.] 1970, no writ); pardon proceedings before the Governor, *Connellee v. Blanton,* 163 S.W. 404 (Tex.Civ. App.—Ft. Worth 1913, writ ref'd); hearings before a grand jury at which an accusatory letter was published, *Hott v. Yarbrough,* 112 Tex. 179, 245 S.W. 676 (Tex.1922); hearings before the Railroad Commission at which an accusatory letter was published, *Aransas Harbor Terminal Railway v. Taber,* supra; hearings before the Pharmacy Board at which a drug manufacturer's letter concerning a druggist's practices in dispensing the manufacturer's drugs was published, *Bloom v. A.H. Robins Co.,* 479 S.W.2d 780 (Tex.Civ.App.—Waco 1972, writ ref'd. n.r.e.), cert. den'd., 410 U.S. 983, 93 S.Ct. 1504, 36 L.Ed.2d 179 (1973).

The H–GAC has been designated by the Texas legislature as the health systems agency for the 13 member counties of the H–GAC. The State legislature designated it as such because of the National Health Planning and Resources Act of 1974 requiring that federal grants for community health services be awarded in accord with determinations of designated local agencies. 42 U.S.C.A. § 300k et seq.; 42 C.F.R. § 51c.105. Pursuant to this authority, the H–GAC Executive Committee conducts hearings on requests for grants. The meetings are formal business meetings at which an agenda is followed, and those who speak are usually invited to do so because they have indicated an interest in the subject matter. A 5-minute rule is followed for all presentations by visitors. The H–GAC's function concerning the request by the 4–C's clinic for funds is described as a recommendation function by the H–GAC directory i.e., the H–GAC does not directly administer the funds, but reviews the requests, investigates the situation, and makes a recommendation to the federal agency, which follows the recommendation in 90% of the cases. The appellee maintains that the H–GAC's duty to determine the region-wide significance of the 4–C's Clinic and its responsibility to make recommendations to federal agencies before an agency can receive funds lend its hearings a quasi-judicial nature.

We disagree. In our view the hearing held before the Executive Committee was not quasi-judicial in nature because of the nature of the duties exercised by the H–GAC. We are, however, of the opinion that the hearing warranted a qualified privilege.

■ There are three reasons for our conclusion that H–GAC meetings should not be enshrouded with an absolute privilege: 1) the committee is not clothed with enough judicial powers to merit the conferment of a quasi-judicial status; 2) the public policy purpose in providing a hearing with an absolute privilege would not be served to the same extent as in those cases in which the privilege has been found to be warranted; and 3) another, less drastic, remedy exists that would adequately protect any comments made at the H–GAC Executive Committee hearing.

In reviewing the cases mentioned above in which a commission was held to exercise quasi-judicial powers, we notice that, in each instance, the commission was the final arbiter. The Texas Insurance Board of

Commissioners was clothed with the authority to license insurance agents and to withdraw those licenses when it found a grievance to be valid. *Reagan,* supra. The Dallas Police Department Internal Affairs Division was authorized to conclude whether complaints were justified and to turn the matter over to a disciplinary board. *Putter,* supra. The State Pharmacy Board held the power to punish pharmacists who violated its rules of ethics. *Bloom,* supra.

Unlike these commissions, the H–GAC makes decisions that are preliminary in nature. Although it compiles information and concludes whether it should recommend a program for continuation, it is not the final arbiter; i.e., it lacks the power to enforce a decision. The most that can be said for the H–GAC Executive Committee, from the evidence before us, is that an agency would find it difficult to obtain the funding without a positive recommendation by the H–GAC, and that in 90% of the cases the H–GAC recommendation is followed by the federal agency.

The H–GAC Executive Committee in the particular situation involved here also lacks the power to compel the attendance of witnesses, and to make binding judgments, and to affect the personal or property rights of private citizens.

We also conclude that an absolute privilege should not be conferred because the public policy purpose in providing a hearing with an absolute privilege would not be served to the same extent as in those cases in which the absolute privilege has been found warranted. The H–GAC serves an important public function indeed. Without such agencies to funnel money to local programs, many badly needed projects would be left undone or unfinished because of lack of funds. Yet, while we recognize its importance as a governmental entity, we cannot overlook the fact that it does not have the inherent safeguards against defamation one would find in the judicial context or in many situations accorded with an absolute privilege. One of the safeguards the commission lacks is secrecy afforded to communications received by the committee.

*McAfee,* supra. As noted earlier in the opinion, the H–GAC meetings are required by law to be open to the public. Consequently, should any defamatory statements be made, they would not be kept covert by a confidentiality requirement. The second safeguard built into the court system is the threat of sanctions should an individual abuse the sanctity of the judicial proceedings by perjuring himself or herself. The H–GAC lacks this authority.

■ Perhaps the most cogent reason for not applying an absolute privilege to protect the proceedings in question is that another, less drastic, privilege exists that would more than adequately protect the vitality of the proceedings held before the Executive Committee. It is a qualified privilege, and exists when social policy considerations are of relatively less weight so that inquiry into the motive and reasonableness behind the statement is permitted. The communications are privileged when made in good faith on any subject matter in which the author has an interest or with reference to which he has a duty to another person having a corresponding duty or interest. The privilege is termed conditional or qualified because the person availing himself of the privilege must use it in a lawful manner and for a proper purpose. *Zarate v. Cortinas,* supra. When a qualified privilege attaches to a proceeding, a presumption of good faith arises in favor of the defendant which, upon a trial on the merits, casts the burden of proof on the plaintiff to prove malice. *Moore & Associates v. Metropolitan Life Insurance Co.,* supra.

The quality of the service provided by health agencies is indeed an important concern to citizens, and the utmost candor is needed when reviewing the level of services provided. This does not, however, warrant an absolute privilege to shield commentators, whether they be citizens or members of the committee, from being sued for defamatory statements made by them. *Id., Kennedy v. Texoma Broadcasters, Inc.,* 507 S.W.2d 864 (Tex.Civ.App.—Dallas 1974); *Koehler v. Dubose,* 200 S.W. 238 (Tex.Civ.

App.—1918, error ref.). *See also, Matviuw v. Johnson,* 70 Ill.App.3d 481, 26 Ill.Dec. 794, 388 N.E.2d 795 (1979), wherein it was decided that a hospital executive committee was entitled only to a conditional privilege despite the provision by the Medical Studies Act for confidentiality of all information, interviews, reports, statements and other data obtained by a committee of an accredited hospital.

■ If only a qualified privilege exists to protect comments made at the hearing held by the H–GAC Executive Committee, we must determine, for purposes of a summary judgment review, that the comments were not made with malice. *Moore & Associates,* supra at 490; *Dun and Bradstreet, Inc. v. O'Neil,* 456 S.W.2d 896 (Tex.1970). In a summary judgment proceeding in which the defendant is the movant, the burden is on him to negate the existence of malice behind the comments made. The defendant in this case did not succeed in negating the existence of malice. *Kennedy v. Texoma Broadcasters, Inc.,* supra; *Swilley v. Hughes,* 488 S.W.2d 64 (Tex.1972); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979).

The appellee claims that the appellant did not preserve for review whether the appellee was entitled to the protection of an absolute privilege because he failed to expressly present the question in his controverting affidavit to the motion for summary judgment.

The appellee is correct that one must expressly present issues in a response to the motion for summary judgment if one is to preserve the question on appeal. Tex.R. Civ.P. 166–A; *City of Houston v. Clear Creek Basin Authority,* supra. However, the case he cites in support of his claim, *Wiley v. City of Lubbock,* 626 S.W.2d 916 (Tex.App.—Amarillo 1981) does not lend him much assistance because the appellant in *Wiley* neglected to file any written answer or response to the City's motions. That is radically different from the case before us, in which the appellant filed two controverting answers to the appellee's motion for summary judgment. Furthermore,

the appellant devoted six full pages of his second controverting answer to a discussion of the appellee's claim of absolute privilege. The issue was clearly before the court for consideration and preserved for review on appeal.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

DUGGAN, Justice, dissenting.

I respectfully dissent from the majority's decision which declines to recognize the Houston-Galveston Area Council (H–GAC) as a quasi-judicial body. Lack of established precedent gives this Court few rigid guidelines upon which to base our decision, and affords us the opportunity to recognize that the quasi-judicial concept, for desirable policy reasons, is broad enough to cover the budgetary hearing operations of the H–GAC.

The function, power and authority of the H–GAC are set forth in the majority opinion and need no further clarification. While the majority concludes that H–GAC's decisions are "preliminary in nature," and that H–GAC is not the "final arbiter" in the budgetary process, I would underscore the majority's observation that H–GAC's budgetary recommendations are adopted by the federal funding agencies involved in approximately 90% of the applications considered. Interested parties therefore know from past history that their views must be persuasively conveyed to H–GAC's executive committee if such views are to be effectuated. The public's best interest is served in such a situation by candid expression of fact or belief without fear of retribution.

The Courts' posture should be one of promoting open interaction between the public and the H–GAC. Imposition of quasi-judicial immunity would serve to benefit the public at a minimal risk to the H–GAC, its members, and those members of the interested public who choose to appear before it. While this suit is brought by a member of the public because of words spoken by a

member of the H–GAC board, roles could well be reversed, such that a citizen speaker could be sued and held liable for comments addressed to H–GAC executive committee members. By the majority ruling, which applies only a *qualified* privilege to speakers at H–GAC executive committee meetings, speakers as well as executive committee members can potentially be deterred from full and frank expression of their viewpoints by the prospect of having to defend lawsuits. Only a final judicial ruling negating "malice" on the part of a speaker would ultimately uphold his right to speak without fear of litigation.

I believe the facts support an opposite conclusion from that expressed by the majority. The H–GAC should be held to be a quasi-judicial body, and statements made in public hearings before its executive committee should be absolutely privileged.