Opinion filed May 30, 2025



## In The

# Eleventh Court of Appeals

_____

## No. 11-23-00154-CV

_____

### SUZONNE FRANKS, Appellant

### V.

### THE TEXAS COMPTROLLER OF PUBLIC ACCOUNTS AND GLENN HEGAR, IN HIS OFFICIAL CAPACITY, Appellees

**On Appeal from the 91st District Court**
**Eastland County, Texas**
**Trial Court Cause No. CV2246427**

### O P I N I O N

In 2020, the Ranchland Wind Project Two, LLC (RWP) filed an application with Baird Independent School District (BISD or the school district) to limit the tax value of a proposed wind farm under the Texas Economic Development Act (TEDA). *See* TEX. TAX CODE ANN. §§ 313.001–.171 (West 2015). Per the requirements of the TEDA at that time, the school district sent a copy of the

application to the Texas Comptroller of Public Accounts (the Comptroller). *See* Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 6, sec. 313.025(b), 2013 Tex. Gen. Laws 3317, 3321 (expired Dec. 31, 2022). The Comptroller then performed an economic impact evaluation and issued a certificate of limitation on appraised value. After it received the certificate, the school district approved the application. Thereafter, Appellant, Suzonne Franks, brought suit against the Comptroller's office, as well as Glenn Hegar, in his official capacity as the Texas Comptroller, seeking among other things a declaratory judgment that the certificate was void. The Comptroller then filed a plea to the jurisdiction. The trial court granted the plea to the jurisdiction, and this appeal followed. We affirm.

*The Texas Economic Development Act*

The TEDA was created to attract manufacturing and other capital-intensive projects to Texas by temporarily limiting taxes that are imposed on new capital investments. TAX § 313.002. The majority of the Act expired in 2022. TAX § 313.007. However, prior to 2023, the statute provided a means by which property owners could apply for limitations on the appraised value of their property. *See* Act of May 26, 2013, 83rd Leg., R.S., ch. 1304 § 6, sec. 313.025(b-1), 2013 Tex. Gen. Laws 3317, 3321–22 (expired Dec. 31, 2022). Specifically, the TEDA provided that "[t]he owner or lessee of, or the holder of another possessory interest in, *any* qualified property . . . may apply to the governing body of the school district in which the property is located for a limitation on the appraised value." Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 6, sec. 313.025(a), 2013 Tex. Gen. Laws 3317, 3321 (expired Dec. 31, 2022) (emphasis added).

The TEDA did not require an applicant to be the owner of the land itself. Instead, the TEDA explicitly contemplated that "[q]ualified property" included (a) land "on which a person proposes to construct a new building or erect or affix a

2

new improvement" that did not exist before the application was submitted, (b) the new building or improvement itself, and (c) any tangible personal property that would be "first placed in service" in a new or expanded facility. Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 3, sec. 313.021(2)(A)(ii), (2)(B), (2)(C)(ii), 2013 Tex. Gen. Laws 3317, 3319 (expired Dec. 31, 2022). Thus, persons and entities with possessory interests in the improvements or tangible personal property that would first be put into service in a new or expanded facility could likewise apply for a limitation.

Additionally, "[q]ualified property" included, among other things, property that was "located in an area designated as a reinvestment zone." Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 3, sec. 313.021(2)(A)(i), 2013 Tex. Gen. Laws 3317, 3319 (expired Dec. 31, 2022). Likewise, the proposed improvement to the property was required to create at least twenty-five new jobs. Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 3, sec. 313.021(2)(A)(iv)(b), 2013 Tex. Gen. Laws 3317, 3319 (expired Dec. 31, 2022). However, the school district was authorized to waive this requirement upon a finding that "the jobs creation requirement exceeds the industry standard for the number of employees reasonably necessary for the operation of the facility." Act of May 22, 2007, 80th Leg., R.S., ch. 864, § 3, sec. 313.025(f-1), 2007 Tex. Gen. Laws 1830, 1831 (expired Dec. 31, 2022).

The school district was not required to consider an application for a limitation on appraised value. Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 6, sec. 313.025(b), 2013 Tex. Gen. Laws 3317, 3321 (expired Dec. 31, 2022). However, if the school district elected to consider an application, the school district was required to request that the Comptroller undertake an economic impact evaluation of the proposal contained within the application. *Id.*

3

The Comptroller was then tasked with two requirements. First, the Comptroller was required to consider whether the project was "reasonably likely to generate . . . tax revenue" in accordance with certain standards that were set out in the TEDA. Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 7, sec. 313.026(c), 2013 Tex. Gen. Laws 3317, 3324 (expired Dec. 31, 2022). Second, the Comptroller was required to consider whether "the limitation on appraised value [was] a determining factor in the applicant's decision to invest capital and construct the project." *Id.* If those two criteria were met, the Comptroller was required to issue a certificate. Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 6, sec. 313.025(d), 2013 Tex. Gen. Laws 3317, 3322 (expired Dec. 31, 2022). If the criteria were not met, the Comptroller was required to provide a "written explanation of the comptroller's decision not to issue a certificate." *Id.* However, even if the criteria were not met, the Comptroller was still authorized to issue a certificate "if the comptroller [made] a qualitative determination that other considerations associated with the project result in a net positive benefit to the state." Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 7, sec. 313.026(f), 2013 Tex. Gen. Laws 3317, 3324 (expired Dec. 31, 2022).

If a certificate was issued by the Comptroller, the school district was charged with either approving or disapproving the application. Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 6, sec. 313.025(b), 2013 Tex. Gen. Laws 3317, 3321 (expired Dec. 31, 2022). The school district was further authorized to designate an area within the school district as a reinvestment zone at the same time it granted the limitation on appraised value. TAX § 312.0025(a).

*Background Facts*

The RWP is a wind energy facility that is located in the easternmost portion of Callahan County. Franks filed suit as a resident and landowner in Eastland

4

County. She filed the underlying suit in Eastland County alleging that venue was proper because the RWP affected her property in Eastland County.

On August 24, 2020, the RWP submitted an Application for Appraised Value Limitation on Qualified Property to BISD. Thereafter, the school district forwarded the application to the Comptroller. The application described the "qualified property" at issue as turbines, a substation, transmission line, and other proposed improvements to the land on which the facility would be located. Likewise, it explicitly indicated that the proposed qualified property would *not* consist of land. The application also included a letter requesting a partial waiver of the TEDA jobs requirement, indicating that the facility would "create 3 full time permanent positions" and that the number of jobs was "congruent with industry standards for renewable energy facilities."

The Comptroller's analysis showed that the proposed project would likely generate sufficient tax revenue to offset the losses resulting from the agreement, and that the limitation on appraised value was a "determining factor in the applicant's decision to invest capital and construct the project." As such, the Comptroller issued a certificate for a limitation on the appraised value of the property. Thereafter, on February 22, 2021, the school district and the RWP entered into an agreement limiting the appraised value of the property.

Franks filed suit against the Comptroller on August 30, 2022, asserting a claim under the Private Real Property Rights Preservation Act (the Property Act). *See* TEX. GOV'T CODE ANN. §§ 2007.001–.045 (West 2016). In her petition, she complained that the RWP's application did not meet the statutory requirements to be approved for a tax limitation, and requested a declaratory judgment that the certificate issued for the RWP is void.

Franks further alleged that the Comptroller's action in issuing the certificate was an ultra vires act that was attributable to Hegar in his official capacity. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (Ultra vires is an exception to sovereign immunity "under which claims may be brought against a state official for nondiscretionary acts unauthorized by law.").

Notably, Franks did not bring suit against the school district, challenge the school district's findings in support of the agreement, or request any relief restricting the manner in which ongoing taxes are collected from the RWP.

After Franks brought suit, the Comptroller filed a plea to the jurisdiction, which was granted by the district court. This appeal followed.

## *Statutory Construction*

"We review questions of statutory interpretation de novo, as they are questions of law." *Butler v. City of Big Spring*, 652 S.W.3d 149, 152 (Tex. App.—Eastland 2022, pet. denied). When interpreting a statute, we must "ascertain and give effect to the Legislature's intent." *Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 847 (Tex. 2024) (quoting *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 540 (Tex. 2021)); *Butler*, 652 S.W.3d at 152. "We look for that intent first and foremost in the plain language of the constitutional or statutory provision." *Odyssey*, 624 S.W.3d at 540; *see also Butler*, 652 S.W.3d at 152. "If the statute's plain language is unambiguous, we interpret its plain meaning, presuming that the Legislature intended for each of the statute's words to have a purpose." *Johnson*, 691 S.W.3d at 847 (quoting *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019)); *see also Butler*, 652 S.W.3d at 152 ("[O]ur objective is to 'ascertain[] and giv[e] effect to the legislature's intent as expressed by the plain and common meaning of the statute's words.'" (quoting *Wichita Cnty. v. Bonnin*, 268 S.W.3d 811, 817 (Tex. App.—Fort Worth 2008, pet. denied))). Statutory terms

6

that are not defined by the legislature "usually bear their common, ordinary meaning." *Johnson*, 691 S.W.3d at 847. Furthermore, when interpreting a statute that an agency is charged with enforcing, the agency's interpretation is entitled to "'serious consideration,' so long as the construction is reasonable and does not conflict with the statute's language." *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011) (quoting *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008)).[1]

## *The Issue in Dispute*

In her sole issue on appeal, Franks complains that the trial court erred when it granted the Comptroller's plea to the jurisdiction.

In its plea to the jurisdiction, the Comptroller argued that Franks did not have standing to assert claims against the Comptroller and that Franks's claims were barred by sovereign immunity. Franks argues that the trial court erred in granting the judgment because (1) sovereign immunity does not apply to her ultra vires claim, (2) sovereign immunity has been waived by the State under the circumstances of this case, and (3) she has pleaded the facts necessary to establish standing.

## *Ultra Vires*

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *AIM Media Tex., LLC v. City of Odessa*, 663 S.W.3d 324, 333 (Tex. App.—Eastland 2023, pet. denied). However, "an action to determine or protect a private party's rights against a state official who has acted *ultra vires*–that is, without legal or statutory authority—is not a suit against the State that sovereign immunity bars."

---

[1] In this instance, the TEDA required the Comptroller to "adopt rules and forms necessary for the implementation and administration" of the Act. Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 12, sec. 313.031(a)(1), 2013 Tex. Gen. Laws 3317, 3326–27 (expired Dec. 31, 2022).

*Phillips v. McNeill*, 635 S.W.3d 620, 628 (Tex. 2021) (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997)); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368 (Tex. 2009).

"[G]overnmental immunity bars suits complaining of an exercise of absolute discretion" by a government official. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 163 (Tex. 2016) (emphasis omitted). However, government officers that are given limited discretion to interpret and apply the law act "without legal authority" when they exceed the bounds of their granted authority or act in conflict with the law itself. *Id.* at 158.

"[A]s a technical matter, the governmental entities themselves—as opposed to their officers in their official capacity—remain immune from suit." *Heinrich*, 284 S.W.3d at 372–73. As such, lawsuits alleging that public officials have acted ultra vires must be brought against the public officials themselves, rather than the entities with which the officials are associated. *Id.* at 373.

Franks maintains that sovereign immunity does not apply because Hegar was acting ultra vires[2] when the certificate was issued. Specifically, Franks argues that, because the properties that were the subject of the application did not satisfy the TEDA's definition of "qualified properties" at the time the application was submitted, Hegar was acting without legal authority.

The tax limitations that were available under the TEDA were available only for "qualified properties." *See* Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 6, sec. 313.025, 2013 Tex. Gen. Laws 3317, 3321 (expired Dec. 31, 2022). A "qualified property" was in turn defined as a property "that is located in an area designated as a reinvestment zone under Chapter 311 or 312 [of the Tax Code] or

---

[2]The Latin phrase "ultra vires" means "beyond the powers (of)," and as a legal term, refers to an act that is "[u]nauthorized" or "beyond the scope of power allowed or granted . . . by law." *Ultra vires*, BLACK'S LAW DICTIONARY (12th ed. 2024).

as an enterprise zone under Chapter 2303" of the Texas Government Code. Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 3, sec. 313.021(2), 2013 Tex. Gen. Laws 3317, 3319 (expired Dec. 31, 2022). Likewise, the TEDA indicated that a "qualified property" must be the subject of a proposal to "make a qualified investment" of a specified minimum amount, which also creates twenty-five new qualifying jobs. *Id.*

Franks argues that that Hegar acted without legal authority when he issued the certificate because the application did not describe a "qualified property" as required by the statute. Specifically, Franks asserts that the application did not describe a "qualified property" because: (1) it was not located in a reinvestment or enterprise zone at the time the certificate was issued, (2) the RWP was not an owner, lessee, or holder of any other possessory interest in the property at the time of the application, and (3) it did not propose to create at least twenty-five new qualifying jobs.

Franks misapprehends the Comptroller's purpose and role in the approval process. In issuing the certificate, the Comptroller's role was limited to undertaking the economic impact analysis, determining whether the project would generate sufficient revenue, and ascertaining whether the approval of the exemption would be a determining factor for the RWP. *See* Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 7, sec. 313.026(c), 2013 Tex. Gen. Laws 3317, 3324 (expired Dec. 31, 2022). By contrast, the Comptroller was not required to consider any of the factors that are enumerated by Franks.

The limited role that was played by the Comptroller in issuing the certificate is further underscored by our reading of the statute, which contemplates that realization of the statutory requirements described by Franks may not occur until after the parties have entered into an agreement for limitation of value.

First, while the TEDA required a property with a limitation on value to be in a reinvestment or enterprise zone, it did not require that the reinvestment or

9

enterprise zone exist *at the time the application was submitted*. *See* Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 3, sec. 313.021(2)(A)(i), 2013 Tex. Gen. Laws 3317, 3319 (expired Dec. 31, 2022). Likewise, it did not require that the zone exist at the time a certificate was considered or issued by the Comptroller. *See id.* Instead, the language of the Tax Code indicated that the school district could have first recognized an investment zone at the time the application was granted. Under Section 312.0025(a) of the Tax Code, a school district "may designate an area . . . as a reinvestment zone if the governing body finds that, *as a result of the designation and the granting of a limitation on appraised value* . . . the designation is reasonably likely to . . . contribute to the expansion of primary employment . . . or . . . attract major investment." TAX § 312.0025(a) (emphasis added). This language contemplated that the "designation and the granting of a limitation" may occur simultaneously. *Id.* As such, Hegar was not acting ultra vires when he issued a certificate in connection with property that was not yet located in an investment or enterprise zone.

Franks argues that, because Section 312.0025(a) anticipates future employment and investment, the statute is "forward looking" and that it must therefore, be contemplating that the reinvestment or enterprise zone would exist before the certificate is issued. This argument is unpersuasive. The realization of employment opportunities and major investment, as described in the statute, need not (and often will not) occur until after the school board gives final approval to the project. As such, the designation of a reinvestment or enterprise zone will almost always be "forward looking," regardless of whether it occurs before the application process or at any point during the application process.

Second, with respect to Franks's argument that the RWP was not an owner, lessee, or holder of a possessory interest in the property at issue, we note that the

10

TEDA contemplated that the property that was the subject of the application might not exist at the time the application and/or certificate was issued. Specifically, the statute recognized that new improvements and buildings that are "propose[d]" at the time of application constituted qualified property. *See* Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 3, sec. 313.021(2)(A)(ii), (B), 2013 Tex. Gen. Laws 3317, 3319 (expired Dec. 31, 2022). Furthermore, since buildings and improvements, as well as tangible personal property could meet the definition of "qualified property," the applicant was not required to hold a possessory interest in the land itself at any time, much less at the time the certificate is issued by the Comptroller. *See* Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 3, sec. 313.021(2), 2013 Tex. Gen. Laws 3317, 3319 (expired Dec. 31, 2022). Accordingly, we likewise conclude that Hegar was not acting ultra vires when he issued a certificate in connection with proposed ownership of improvements.

Finally, we note that, because the school district ultimately had the authority to waive or alter the statutory jobs requirements, and because the application itself indicated that a waiver was requested, Hegar was not acting ultra vires based on the application's failure to signal that the project would not create twenty-five jobs. *See* Act of May 22, 2007, 80th Leg., R.S., ch. 864, § 3, sec. 313.025(f-1), 2007 Tex. Gen. Laws 1830, 1831 (expired Dec. 31, 2022).

The Comptroller maintains that "the TEDA's requirements may be satisfied after the certificate issues." The Comptroller's reading of the TEDA is consistent with our own, and we conclude it to be reasonable and free of conflict with the language of the TEDA. *See Tex. Citizens*, 336 S.W.3d at 624. As such, we hold that Hegar was not acting ultra vires when he issued the certificate.

*Waiver of Sovereign Immunity*

Franks also argues that sovereign immunity is not applicable to her cause of action under the Property Act because sovereign immunity is expressly waived therein.

The State retains sovereign immunity from suit to the extent that immunity has not been abrogated by the legislature. *See Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002); *AIM Media*, 663 S.W.3d at 333. It is within the sole province of the Texas Legislature to waive or abrogate sovereign immunity. *Fed. Sign*, 951 S.W.2d at 409; *AIM Media*, 663 S.W.3d at 334.

The Property Act requires governmental entities, including state agencies, to conduct a "written takings impact" in connection with certain "proposed governmental action[s]." GOV'T § 2007.043(a). The "governmental actions" that are subject to the Property Act are subdivided into the following four categories:

> (1) the adoption or issuance of an ordinance, rule, regulatory requirement, resolution, policy, guideline, or similar measure;
>
> (2) an action that imposes a physical invasion or requires a dedication or exaction of private real property;
>
> (3) an action by a municipality that has effect in the extraterritorial jurisdiction of the municipality, excluding annexation, and that enacts or enforces an ordinance, rule, regulation, or plan that does not impose identical requirements or restrictions in the entire extraterritorial jurisdiction of the municipality; and
>
> (4) enforcement of a governmental action listed in Subdivisions (1) through (3), whether the enforcement of the governmental action is accomplished through the use of permitting, citations, orders, judicial or quasi-judicial proceedings, or other similar means.

GOV'T § 2007.003(a). A takings impact analysis is required for categories (1) through (3), but not for category (4). GOV'T § 2007.043(a). If a governmental entity fails to conduct the takings impact, an affected private real property owner

"may bring suit for a declaration of the invalidity of the governmental action." GOV'T § 2007.044(a).

The Comptroller asserts that, when it issued the certificate, it was not engaged in a "governmental action" that falls within one of the first three categories in Section 2007.003(a). Franks disagrees, arguing that the issuance of the certificate was a "regulatory requirement, resolution, . . . or similar measure" under Section 2007.003(a)(1).

We conclude that the Comptroller's action in issuing a certificate was not a "regulatory requirement, resolution, . . . or similar measure" under Section 2007.003(a)(1). In order to maintain a clear separation of powers in accordance with the requirements of our constitution, Texas courts have traditionally divided the functions of administrative agencies into two categories: quasi-legislative and quasi-judicial. TEX. CONST. art. II, § 1 (establishing three branches of government and stating that "no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others"); *Key W. Life Ins. Co. v. State Bd. of Ins*., 350 S.W.2d 839, 848 (1961) (recognizing the importance of a separation of powers and holding that the State Board of Insurance was acting in a judicial capacity when it acted to approve a particular policy form); *Macias v. Rylander*, 995 S.W.2d 829, 832 (Tex. App.—Austin 1999, no pet.). "Generally, an administrative agency acts in a legislative capacity when it addresses broad questions of public policy and promulgates rules for future application 'to all or some part of those subject to its power.'" *Macias*, 995 S.W.2d at 833 (quoting *Key W. Life*, 350 S.W.2d at 847). "A judicial inquiry, on the other hand, typically involves an investigation of present or past facts and a determination of liability based on laws already in existence." *Id.*

The legislature appears to have had this distinction in mind when it enacted Section 2007.003(a). Subsection (a)(1), which concerns the adoption of rules and guidelines, including regulatory requirements, attempts to describe governmental actions that address broader questions of public policy that apply to a large number of people. GOV'T § 2007.003(a)(1). On the other hand, subsection (a)(4) concerns the investigation and application of facts based on laws already in existence, including "quasi-judicial proceedings." *Id.* § 2007.003(a)(4).

"Texas courts have developed a six-factor test to determine whether an entity 'was acting in a quasi-judicial, or merely an administrative, capacity' at the relevant time." *Doe v. Cruz*, 683 S.W.3d 475, 496 (Tex. App.—San Antonio 2023, no pet.) (quoting *Vill. of Bayou Vista v. Glaskox*, 899 S.W.2d 826, 829 (Tex. App.—Houston [14th Dist.] 1995, no pet.)). The factors include:

> 1) the power to exercise judgment and discretion; 2) the power to hear and determine or to ascertain facts and decide; 3) the power to make binding orders and judgments; 4) the power to affect the personal or property rights of private persons; 5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and 6) the power to enforce decisions or impose penalties.

*Cruz*, 683 S.W.3d at 496 (quoting *Glaskox*, 899 S.W.2d at 829).

In this instance, the RWP applied for a tax limitation, and—as a part of the application process—the Comptroller was responsible for determining whether to issue a certificate for limitation on appraised value. *See* Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 7, sec. 313.026(c), 2013 Tex. Gen. Laws 3317, 3324 (expired Dec. 31, 2022). The "governmental actions" that are involved in this process include the exercise of judgment and discretion (factor 1), the power to hear and determine facts and make decisions (factor 2), the power to make binding decisions (factor 3), and the power to affect the property rights of private persons (factor 4). The actions

of the Comptroller in this case do not satisfy *all* of the factors that are considered by Texas courts when assessing the nature of a governmental action. However, "[a]n administrative agency need not have all [such] powers to be considered quasi-judicial." *Parker v. Holbrook*, 647 S.W.2d 692, 695 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). Rather, "the more of these powers it has, the more clearly is it quasi-judicial in the exercise of its powers." *Id.*

Based on the factors described above, we conclude that the Comptroller was serving a quasi-judicial function when it issued the certificate.[3] As such, a takings impact assessment was not required. *See* GOV'T § 2007.043(a).

Furthermore, the Property Act indicates that no takings impact assessment is required where "the enforcement of the governmental action is accomplished through the use of permitting . . . or other similar means." GOV'T §§ 2007.003(a), 2007.043(a). We conclude that the process of applying for a tax accommodation, together with the process of securing a certificate for limitation on appraised value is similar to the process for securing a permit, which likewise involves the consideration of whether a particular party should be permitted to undertake an activity or be exempted from a requirement. *See Tex. Gen. Land Office v. La Concha Condo. Ass'n*, No. 13-19-00357-CV, 2020 WL 2610934, at *8 (Tex. App.—Corpus Christi–Edinburg May 21, 2020, no pet.) ("[W]hen a government defendant merely 'enforce[s]' another governmental action via 'permitting, citations, orders, judicial or quasi-judicial proceedings, or other similar means,' the [takings impact assessment] requirement does not apply." (quoting GOV'T § 2007.043(a))); *see also* TEX. LOC. GOV'T CODE ANN. § 245.001 (West 2016) (defining a permit, in part, as an "authorization required by law, rule, regulation, order, or ordinance that a person

---

[3]The school board was likewise serving the same function when it approved the application.

must obtain to perform an action or initiate, continue, or complete a project for which the permit is sought"). As such, even if the issuance of a certificate under the TEDA were not a quasi-judicial function, we would still conclude that a takings analysis is not required because the issuance of a certificate is "similar" to the issuance of a permit.

We conclude that sovereign immunity has not been waived for purposes of Franks's claims, since a takings analysis was not required in connection with the issuance of the certificate and/or the approval of the application.

*Standing*

In its plea to the jurisdiction, the Comptroller also argued that Franks lacked standing to bring suit. We note that the El Paso Court of Appeals recently addressed a similar claim with respect to standing in *Green v. Tex. Comptroller of Pub. Accts.*, 697 S.W.3d 305 (Tex. App.—El Paso 2023, pet. filed). *Green* also involved a claim against the Comptroller for the issuance of a certificate of limitation on appraised value under Chapter 313 of the Tax Code. *Id.* at 307. The project at issue in *Green* was another wind project involving the Baird Independent School District. *Id.* at 309. The suit in *Green* was filed in Callahan County, appealed to this court, and then transferred to the El Paso Court of Appeals by order of the Texas Supreme Court. *Id.* at 308 n.1. The El Paso Court of Appeals determined that the taxpayers in *Green* lacked standing because they were unable to show that their claimed injury was fairly traceable to the Comptroller's actions. *Id.* at 313.

"Standing is a constitutional prerequisite to maintaining suit in either federal or state court." *Sneed v. Webre*, 465 S.W.3d 169, 179–80 (Tex. 2015) (quoting *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001)). Thus, "[a] challenge to a party's standing is an attack on the party's ability under the United States and Texas Constitutions to assert a claim." *Green*, 697 S.W.3d at 311 (quoting *Tex. Med. Res.*,

16

*LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 440 (Tex. 2023)). In assessing standing, Texas courts have adopted the federal standing requirements that are set out in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021).

"To maintain standing, a plaintiff must show: (1) an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Data Foundry*, 620 S.W.3d at 696.

Under the first element of the standing test, a plaintiff must normally "demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Williams*, 52 S.W.3d at 178–79. However, a taxpayer is considered to have sufficient interest in the subject-matter of a lawsuit when bringing "an action to restrain the illegal expenditure . . . of tax money." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 556 (Tex. 2000) (quoting *Hoffman v. Davis*, 100 S.W.2d 94, 96 (Tex. 1937)). Likewise, the legislature may choose to create statutory terms that confer standing on a particular class of litigants. *See, e.g.*, *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984) (The "general rule of standing is applied in all cases absent a statutory exception to the contrary.").

Franks maintains that she has established standing under three separate principles. First, Franks argues that she has established generalized standing under the standards enunciated in *Lujan* and *Data Foundry*. Second, she argues that she has standing to bring suit as a taxpayer under the standards set out in *Bland*. Finally, she argues that she has established "statutory standing" under the terms of the Property Act. *See* GOV'T § 2007.044(a).

17

A. *Generalized Standing*

In support of her argument that she has satisfied the first element of *Lujan* and *Data Foundry*, Franks argues that she has suffered a "concrete and particularized" injury because (1) "her tax money is being used to subsidize" the project and (2) "the value of her property has been diminished" by the construction of the project. The Comptroller does not challenge this argument on appeal.

The second element of the test that is set out in *Lujan* and *Data Foundry* indicates that Franks's injury must be "fairly traceable" to the actions of the Comptroller. *Data Foundry*, 620 S.W.3d at 696; *see Lujan*, 504 U.S. at 560. This element is essential to the analysis because a court can act "only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 155 (Tex. 2012) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

"[T]raceability does not require a defendant's action to be the sole cause of harm." *Grassroots Leadership, Inc. v. Tex. Dep't of Family & Protective Services*, 646 S.W.3d 815, 820 (Tex. 2022). Rather, an action can also be fairly traceable when it has a "determinative or coercive effect upon the action of someone else." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

In this instance, Franks's claimed injuries flow out of the alleged misuse of her "tax money" and an alleged diminution in the value of her property that (according to Franks) resulted from the construction of the project. These claimed injuries are the immediate result of the actions of the school board in approving the tax exemption, not the issuance of a certificate by the Comptroller. *See* Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 6, sec. 313.025(b), 2013 Tex. Gen. Laws 3317, 3321 (expired Dec. 31, 2022); *see also Green*, 697 S.W.3d at 312 (rejecting

18

taxpayer's theory of traceability because "it is the school board—not the Comptroller—that decides whether to enter a tax-limitation agreement"). Furthermore, while the actions of the Comptroller may be one of several remote causes of the alleged injuries, the issuance of the certificate did not have a "determinative or coercive effect" upon the actions of the school board, which held the discretion to grant or deny the application, even after the certificate was issued. *See* Act of May 26, 2013, 83rd Leg., R.S., ch. 1304, § 6, sec. 313.025(b), 2013 Tex. Gen. Laws 3317, 3321 (expired Dec. 31, 2022); *see Grassroots*, 646 S.W.3d at 820. As such, Franks has failed to satisfy the traceability element of the standing test.

The third element of the test for standing requires a showing of redressability. That is, Franks must establish a "substantial likelihood that the requested relief will remedy the alleged injury." *Heckman*, 369 S.W.3d at 155 (quoting *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)). Thus, for example, where a plaintiff asserts a claim for injunctive relief, "but the injunction could not possibly remedy his situation, then [the plaintiff] lacks standing to bring that claim." *Id.*

Franks maintains that she has satisfied the third element because a judgment declaring the certificate as void would have the effect of "voiding the tax limitation" and create a "[r]emoval of [the] tax shield." However, Franks's arguments relating to the element of redressability are plagued with problems that are similar to her arguments relating to the element of traceability. Franks did not come to the trial court with a request to restrain the school district from collecting the taxes at issue. She did not even ask the trial court to declare the value limitation agreement itself as void. Instead, she merely sought a declaration that the Comptroller's certificate is void. And while a void certificate might affect the validity of the value limitation agreement, and—ultimately—the nature of the taxes that are imposed on the RWP,

no relief could be granted by the trial court in connection with the ongoing collection of taxes based solely on Franks's pleadings.

We conclude that, because she has failed to satisfy the second and third elements of the test enunciated in *Lujan* and *Data Foundry*, Franks has failed to establish generalized standing.

B.  *Taxpayer Standing*

Franks also maintains that, because she has filed "an action to restrain the illegal expenditure . . . of tax money," she has independently established standing as a taxpayer.  *See Bland*, 34 S.W.3d at 556 (quoting *Hoffman*, 100 S.W.2d at 96).  She further argues that her standing as a taxpayer exempts her from satisfying the more generalized elements that are set out in *Lujan* and *Data Foundry*.  However, the cases recognizing the taxpayer standing exception consistently limit its application to the first element of the test.  *See, e.g.*, *Perez v. Turner*, 653 S.W.3d 191, 199 (Tex. 2022) ("Texas law has long recognized *an exception to this particularity requirement* for taxpayers seeking to 'enjoin the illegal expenditure of public funds.'" (quoting *Bland*, 34 S.W.3d at 556) (emphasis added)); *Williams*, 52 S.W.3d at 179 ("Taxpayers in Texas have standing to enjoin the illegal expenditure of public funds, and *need not demonstrate a particularized injury*.") (emphasis added); *Bland*, 34 S.W.3d at 556 ("a taxpayer has standing to sue in equity to enjoin the illegal expenditure of public funds, *even without showing a distinct injury*.") (emphasis added).

In *Green*, the El Paso Court of Appeals addressed the question of whether the taxpayer standing exception supplants the traceability element in a matter that, like this case, involved an effort to void a Comptroller certificate under the Property Act. 697 S.W.3d at 307.  Like Franks, the plaintiffs in *Green* argued that it was not necessary for the court to determine traceability as a result of their standing as

20

taxpayers. *Id.* at 313. However, the court held that "the Landowners' taxpayer standing argument is responsive to the particularized-injury requirement of standing, not its traceability requirement." *Id.* We agree with the El Paso Court of Appeals and conclude that a plaintiff claiming taxpayer standing must still satisfy the traceability and redressability elements of *Lujan*.

Because Franks has failed to establish traceability and redressability in connection with her standing claims, we conclude that Franks does not have taxpayer standing.

Finally, we note that taxpayer standing cases require a showing of an illegal *expenditure* of public funds. *See, e.g.*, *Williams*, 52 S.W.3d at 175 (Plaintiffs were seeking, among other things, to enjoin the expenditure of funds to support a religious-education program in the Tarrant County Corrections Center.); *Bland*, 34 S.W.3d at 549 (Taxpayers sought to prohibit payment of installments on an allegedly illegal lease-purchase agreement.). This principle has been extended to lawsuits alleging that the collection of certain taxes was itself illegal. *Perez*, 653 S.W.3d at 200 ("[W]hen the allegation is that the tax *itself* was unauthorized by law, a plaintiff who paid the tax may rely on taxpayer standing."). It has also been extended to lawsuits alleging that tax funds have been improperly *allocated*. *Jones v. Turner*, 646 S.W.3d 319, 324 (Tex. 2022) ("[W]hen the law requires that a certain amount of money be directed to a specific service, and the plaintiff alleges that it is being directed and spent elsewhere, the taxpayer has alleged an illegal expenditure sufficient to confer taxpayer standing."). However, it remains unclear that the application of a value limitation agreement can somehow be characterized as an "illegal expenditure," and we do not comment on whether taxpayer standing might otherwise be conferred on Franks in connection with the first element of the standing test.

C. *Statutory Standing*

Franks also alleges that she has statutory standing because the Property Act permits a party to bring suit when that party is "affected" by the failure of a governmental entity to perform an impact assessment that is required by law. *See* GOV'T § 2007.044(a).

In this instance, we have already concluded that the Property Act does not require a takings impact assessment. As such, Franks does not have statutory standing under Section 2007 of the Government Code.

D. *Conclusion*

For the reasons stated herein, we overrule Franks's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


May 30, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.